(No. 23737.—■)

THE CAROLENE PRODUCTS COMPANY, Appellee, *vs.* WALTER
W. McLAUGHLIN, Director of Agriculture, Appellant.

*Opinion filed December 10, 1936.*

OTTO KERNER, Attorney General, TRUMAN A. SNELL,
and LOUIS SALINGER, (W. J. EMERSON, of counsel,) for
appellant.

GEORGE N. MURDOCK, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The Carolene Products Company filed a complaint in the circuit court of Sangamon county to restrain Walter W. McLaughlin, Director of Agriculture, from enforcing against it the provisions of a statute known as the Filled Milk act, filed July 19, 1935, and in force ninety days thereafter. (Laws of 1935, p. 886; State Bar Stat. 1935, p. 1682; Smith-Hurd Stat. 1935, p. 1699.) A temporary injunction was issued. The defendant answered the complaint. Evidence was heard and a decree was entered finding the act unconstitutional and granting a permanent injunction. The defendant prosecutes this appeal.

A similar statute known as the Filled Milk law, approved June 21, 1923, was held invalid in 1931. (*People v. Carolene Products Co.* 345 Ill. 166.) The General Assembly repealed that statute in 1935 and enacted the present Filled Milk act to replace it. Section 1, so far as it is pertinent to this inquiry, defines filled milk as "any milk, cream or skimmed milk, whether or not condensed, evaporated, concentrated or desiccated, or any of the fluid derivatives of any of them, to which has been added any fat or oil other than milk fat." The second section declares that "filled milk," as defined in section 1, is an adulterated food and that its sale constitutes a fraud upon the public. Section 3 prescribes that it shall be unlawful for any person to manufacture for sale within this State, or sell or exchange or have in his possession with intent to sell or exchange, any "filled milk" as defined in the act. Penalties for the violation of this statute are prescribed by section 41 of the Pure Food law. State Bar Stat. 1935, p. 1687; Smith-Hurd Stat. 1935, p. 1703.

The factual situation requires consideration. The plaintiff is a domestic corporation engaged in selling throughout this State two products, called Carolene and Milnut, manu-

factured by the Litchfield Creamery Company at Litchfield, Illinois. Differing only in name, they are composed of evaporated skimmed milk to which is added cocoanut oil, the latter being a fat other than milk fat. The cocoanut oil added to the skim milk to replace the extracted butter fat is much less expensive than butter fat. The plaintiff's products can be, and are, sold cheaper than regular evaporated milk or condensed milk. Carolene and Milnut have the same consistency, color, taste and odor as regular evaporated milk, and are packed in air-tight cans of the same shape and size as those used by the manufacturers of regular evaporated milk. The principal, if not the only, difference between evaporated milk and plaintiff's products is that in the latter the fat content is the fat of cocoanut oil instead of butter fat. The labels on the cans plainly state that the particular product is "a compound of refined nut oils and evaporated skimmed milk," giving the proportions of each, and that it is "not to be sold for evaporated milk." The labels state further: "Especially prepared for use in coffee, baking and for other culinary purposes. This product complies in all respects with the Federal Food and Drugs act of June 30, 1906, and is neither adulterated nor misbranded under the provisions thereof."

From the evidence it appears that cocoanut oil is a widely used food product, it being the principal ingredient of oleomargarine; that it is used in the manufacture of oleomargarine in much larger relative amounts than in Carolene and Milnut without violating any law of this State; that its digestibility is the same as butter fat; that it is one of the finest vegetable oils on the market and that it is a wholesome food product. Scientific tests consisting of nutrition experiments showed that Carolene and Milnut, consisting of evaporated skimmed milk and cocoanut oil, were healthful, wholesome foods and that nothing unhealthful or deleterious was contained in them. Similar tests conducted with a typical evaporated milk produced the same results.

Much evidence was introduced concerning the amount of a certain chemical substance known as vitamin "A" in the plaintiff's products and in regular evaporated milk. When milk is separated from the cream this vitamin inheres in the cream to such an extent that it is wholly or substantially absent from skimmed milk. Vitamin "A" is not present in cocoanut oil. Little vitamin "A" is therefore present in Carolene and Milnut. These products are, however, rich in all of the water-soluble vitamins, such as "B" and "G," and contain in an increased amount all of the valuable minerals, proteins and carbohydrates of milk. Though plaintiff's products contain little, if any, vitamin "A," many of the more common foods, such as white flour, crackers, raisins, sugar and molasses, contain no vitamin "A" whatsoever. In a mixed diet the mere fact that this vitamin is absent in any one food is of no special importance. Evaporated milk contains considerably more vitamin "A" than plaintiff's products. Medical testimony disclosed that during the first year of a child's life the vitamin "A" requirements are greater than at any other period of life; that as products made of skimmed milk and cocoanut oil contain no appreciable amount of vitamin "A" they are not proper substitutes for evaporated milk, commonly prescribed for infant feeding by child specialists; that if used exclusively for long periods of time such products would cause a child to suffer harmful effects, and, in particular, that the want of a sufficient amount of vitamin "A" in a child's diet would render him susceptible to infection of the upper respiratory tracts.

During February, 1935, two women employed by the Evaporated Milk Association, Chicago, visited thirty-nine retail grocery stores in that city selected by officers of the association. From the testimony of these investigators it appears that when a merchant was asked for evaporated milk the usual standard brands were offered, and if a cheaper article was requested Milnut or Carolene was exhibited. In

six of the stores they saw no evidence of plaintiff's products. In nineteen of the thirty-three remaining stores visited during a four-day period the witnesses purchased Milnut. They saw the labels on the cans, knew they were not buying regular evaporated milk and were in no way deceived.

To further establish a basis for the legislative declaration that fraud would be perpetrated by the mere sale of filled milk products, the defendant sought to introduce twenty-four newspaper advertisements of certain retailers who sold the plaintiff's products. Twenty of the newspapers in question were published in different parts of Illinois outside of Chicago. The advertisements covered a period ranging from approximately a few months to two years prior to the passage of the Filled Milk act now attacked. Carolene and Milnut were advertised in these papers by retail grocers or markets as "milk" and "evaporated milk" and offered for sale at a lower price than regular evaporated milk. The defendant also offered to prove by an inspector of the Division of Foods and Dairies of the State of Illinois, circulars published by certain retail markets in Chicago advertising Milnut as "milk." There was no evidence that the advertising was illegal or could be used fraudulently or that anyone was actually defrauded. It further appeared that the plaintiff had nothing to do with any of the advertisements. On the other hand, the plaintiff's testimony tended to show that it did not desire to have its products confused with evaporated milk, but preferred that they should be sold upon their merits as milk compounds claimed to be superior to ordinary evaporated milk, and it instructed its jobbers and dealers to this effect. The trial judge rested his refusal to admit the defendant's exhibits in evidence on the ground that they were not properly identified and hence no proper foundation had been laid for their introduction.

On the basis of the foregoing facts the plaintiff contends that the Filled Milk act deprives it of its property without

due process of law in two particulars: First, by taking from it the right to a judicial investigation; and second, that it is a legislative usurpation of judicial power, denies it the equal protection of the law by unlawfully and improperly discriminating against filled milk without imposing like restrictions upon oleomargarine, and is special legislation. To sustain the statute the defendant contends that the act is a valid exercise of the police power of the State.

This court in *People* v. *Carolene Products Co. supra,* decided that the Filled Milk act of 1923 was special legislation because it did not prohibit the sale of other products to which cocoanut oil has been added, particularly oleomargarine. In that case the facts were stipulated, it being agreed that neither evaporated skimmed milk nor cocoanut oil, nor the combination, was harmful or deleterious to health. It was further stipulated that the use of cocoanut oil in oleomargarine was not prohibited by the laws of this State. In the present case these facts were put in issue by the pleadings. The evidence tended, however, to prove the facts which were stipulated in the earlier case. The reasons set forth in the opinion holding the Filled Milk act of 1923 void as being arbitrary and unreasonable, apply with equal force to sections 1 and 3 of the present act, which are substantially the same as section 1 of the former statute. To the authorities cited in that opinion may be added two recent decisions of the courts of last resort of Michigan and Nebraska holding Filled Milk acts corresponding to the act of 1923 and similar to the one now assailed, unconstitutional. *Carolene Products Co.* v. *Thomson,* 267 N. W. (Mich.) 608; *Carolene Products Co.* v. *Banning,* 268 id. (Neb.) 313.

The question remains whether section 2 of the present statute brings the Filled Milk act of 1935 within the scope of the legitimate exercise of the police power. The applicable principles are well settled. The challenged statute constitutes a valid exertion of the police power of the State

if its provisions bear a real and substantial relation to the public health or the protection of the public against fraud. Legislatures may not, however, under the guise of the police power, impose unnecessary and unreasonable restrictions upon the use of private property or the pursuit of useful activities and lawful occupations. (*Weaver* v. *Palmer Bros. Co.* 270 U. S. 402; *Burns Baking Co.* v. *Bryan,* 264 id. 504; *Koos* v. *Saunders,* 349 Ill. 442; *Frazer* v. *Shelton,* 320 id. 253.) The legislative determination of whether a statute is a proper exercise of the police power is not necessarily conclusive. Whether the means employed have any real, substantial relation to the public health, comfort, safety or welfare, or are essentially arbitrary and unreasonable, is a question which is subject to review by the courts. *People* v. *Belcastro,* 356 Ill. 144; *Banghart* v. *Walsh,* 339 id. 132; *People* v. *Robertson,* 302 id. 422; *People* v. *Steele,* 231 id. 340.

The defendant insists that in the light of the above principles the statute may be sustained as an enactment for the preservation and protection of the public health. He asserts that filled milk products are harmful to the public health because of the absence of vitamin "A." Obviously, the mere deficiency in this element does not warrant the prohibition of the sale of Carolene and Milnut when many common articles of food previously mentioned do not contain it. Furthermore, recourse to the statute itself shows that it merely prohibits additions to—not subtraction from—milk and its derivatives, and that this prohibition applies both to whole milk and cream, which it is conceded are rich in vitamin "A," and to skim milk, which lacks it. Under this act skim milk and its derivatives may be sold even though devoid of vitamin "A." On the other hand, skim milk and its derivatives to which have been added cocoanut oil, the combination of which contains practically no vitamin "A," cannot be sold even though no ingredient deleterious to health is added. Manifestly, the statute was not

primarily concerned with the lack of vitamin "A" and its effect upon the public health. Moreover, the act does not purport to differentiate between harmful and innocuous foreign oils or fats. It is therefore not primarily an adulteration act.

The defendant maintains further that the statute is a valid exercise of the police power to prevent fraud, even though the consumption of filled milk products does not impair health. To support this contention he argues that the present statute differs from the one previously held invalid in that it is regulatory while the former was prohibitory. Under the general police power of the State the legislature may make regulations to prevent fraud and deceit as well as for the public health, comfort, safety and welfare. (*People* v. *Henning Co.* 260 Ill. 554; *People* v. *Price,* 257 id. 587.) The manifest legislative intent expressed in the statute is the prevention of supposed fraud on the public through the sale of filled milk or its fluid derivatives, to which has been added any fat or oil other than milk fat, as natural milk or its derivatives, whether marketed under its true name or otherwise. To accomplish this purpose the General Assembly has enacted the statute in controversy, which is essentially prohibitory in nature. So far as the plaintiff is concerned, the effect of the act is to inhibit the sale of its products irrespective of actual misrepresentation, deception or fraud. No question of the power of the legislature to regulate the production and sale of milk and its derivatives is presented. The issue is, on the other hand, whether the legislative fiat that filled milk is an adulterated food and its sale a fraud upon the public is within the scope of the regulatory police power.

The statute does not declare that filled milk products are harmful to health. The proof adduced shows that those sold by the plaintiff are nutritious and wholesome, and the defendant admits that they are not *per se* deleterious in the sense that they contain anything poisonous or otherwise

injurious. Section 2, however, contains a conclusive presumption as to fraud and adulteration. The legislature does not possess the power to declare what shall be conclusive evidence of a fact, as such a declaration would be an invasion of the power of the judiciary. (*Johnson* v. *Theodoron,* 324 Ill. 543; *People* v. *Falk,* 310 id. 282; *Shellabarger Elevator Co.* v. *Illinois Central Railroad Co.* 278 id. 333; *People* v. *Rose,* 207 id. 352.) The Supreme Court of the United States has held that a statute creating a presumption which operates to deny a fair opportunity to rebut it contravenes the due process clause of the fourteenth amendment to the Federal constitution. (*Heiner* v. *Donnan,* 285 U. S. 312; *Bailey* v. *Alabama,* 219 id. 219.) Likewise this court, in *Winter* v. *Barrett,* 352 Ill. 441, referring to the portion of section 1 of the Sales Tax act of 1933 which stated that for the purposes of the act " 'tangible personal property' does not mean or include farm products or farm produce sold by the producer thereof or motor fuel," stated: "The legislature has no power to, by legislative enactment, declare that not to be a fact which every one knows is a fact, though it may by an otherwise valid enactment declare that for the purposes of the application of the act that which is recognized as a fact may be excluded from such application." Conversely, the legislative department lacks power to declare that to be a fact which everyone knows is not a fact.

Under the law before us, the mixture of any oil or fat other than milk fat with any milk, cream or skimmed milk constitutes conclusive evidence that the resultant product is an adulterated food and if sold the sale is a fraud upon the public, and by section 3 such sale is made a penal offense. Punishment for selling filled milk is thus based entirely upon the conclusive presumption concerning adulteration and fraud. While the legislature may enact statutes which affect milk and milk products, the application of the statute to a specific case is a judicial function. By deny-

ing vendors such as the plaintiff the right to offer proof with respect to adulteration and fraud the statute deprives them of due process of law and of the equal protection of the law. (*Weaver* v. *Palmer Bros. Co. supra; Hovey* v. *Elliott,* 167 U. S. 409; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Minnesota,* 134 id. 418; *Gillespie* v. *People,* 188 Ill. 176; *Newland* v. *Marsh,* 19 id. 376.) Furthermore, the statute, in declaring conclusively that the mixture of harmless, healthful food products produces an adulterated food and that its sale is a fraud upon the public, invades the province of the judiciary.

The defendant contends, however, that the testimony of the two investigators previously narrated, together with the advertisements of retail grocers which he attempted to introduce in evidence, disclosed conditions obtaining in Illinois relative to the sale and advertising of plaintiff's products which justified the prohibition of their manufacture and sale. Even if it be conceded, as the defendant urges, that the advertisements should have been admitted, the concession cannot avail him. The record wholly fails to show a single instance of actual deception or of the sale of either of plaintiff's products for infant feeding purposes. Misrepresentations on the part of a few retailers do not, alone, constitute public fraud warranting the extinction of a legitimate and useful business. A like situation obtained in *Carolene Products Co.* v. *Banning, supra.* The evidence disclosed that a few retail grocers in Omaha kept Carolene on the same shelf with condensed milk, that they exhibited it to customers who asked for milk or evaporated milk, and, further, that some retailers advertised it as milk. In pointing out that casual instances of deception on the part of retailers were insufficient to authorize the prohibition of the sale of a product under the police power, the Nebraska Supreme Court observed: "To so hold would give the legislature power to prohibit the sale of any article on the market, as all are subject to the possibility of being mis-

represented. If retailers of a wholesome and nutritious food product practice deception in its sale, the remedy is by regulation and not by a destruction of the business. * * * The evils of which the State complains can undoubtedly be avoided by reasonable regulation." Similarly, the Michigan Supreme Court, in *Carolene Products Co.* v. *Thomson, supra,* said: "The State also contends that the act may be sustained under the police power to prevent fraud, but it fails to suggest the specific fraud the prevention of which the prohibition of the statute is reasonably related. Defendants made no showing of possibility of fraud in the sale of Carolene except that three grocers in Lansing kept the product on shelves with evaporated milk; one, on inquiry for milk products or evaporated milk exhibited Carolene and two kinds of evaporated milk; and a retailer in Grand Rapids advertised Milnut as giving 'better results than ordinary evaporated milk. A blend-evaporated.' Even if they actually deceive, a few casual and individual deceptive offers of a product would not constitute public fraud and, therefore, would not afford such reasonable relation between a public wrong and the remedy as to justify absolute prohibition of sale of the product." It is not claimed that the possibilities of fraud in the sale of plaintiff's filled milk products exist in this State except as to misrepresentations by a few retailers. The conclusion is inescapable that the possibilities of fraud in the sale of these products is so infinitesimal as to nullify any presumption that fraud exists to an extent sufficient to be denominated public. *De minimis non curat lex.*

Upon the authority of *People* v. *Carolene Products Co. supra,* and for the reasons set forth in this opinion, the Filled Milk act is void. The decree of the circuit court must therefore be affirmed. *Decree affirmed.*