The **BORDEN COMPANY**, a corporation, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 446–53.

United States District Court D. New Jersey.

Aug. 31, 1955.

388

Pitney, Hardin & Ward, Newark, N. J., for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., for defendant, H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, H. Eugene Heine, Jr., Sp. Assts. to the Atty. Gen., of counsel.

FORMAN, Chief Judge.

Plaintiff, Borden Company, has sued the United States for a refund of $2,958.30, representing taxes paid on distilled spirits purchased during January and February of 1952. In its complaint it alleged that during the quarter January 1 to March 31, 1952 it used 311.44 gallons of distilled spirits in the manufacture of vanilla flavor and rum bisque ice cream, *nonbeverage products* within the meaning of the Internal Revenue Code; that it had qualified under the law to recover the tax so paid and that on June 6, 1952 it mailed its claim for refund or "drawback" in the said sum to the District Supervisor, Alcohol Tax Unit, Baltimore, Maryland, which claim was received within three months next succeeding the quarter for which the "drawback" was claimed, but that the defendant has refused to pay the claim.

The defendant has answered, in effect denying that a valid claim was filed.

This court has jurisdiction over this suit under 28 U.S.C. §§ 1340, 1346 and 1402.

The law governing such refunds is found in the Internal Revenue Code of 1939 as amended, 26 U.S.C. §§ 3250 and 3772 (1952):

"§ 3250. Tax * * * (*l*) Manufacturers or producers of designated nonbeverage products—(1) in general.

"Any person using distilled spirits produced in a domestic registered distillery or industrial alcohol plant and fully tax-paid in the manufacture or production of medicines, medicinal preparations, food products, flavors, or flavoring extracts which are unfit for beverage purposes, upon payment of a special tax per annum, shall be eligible for drawback at the time when such distilled spirits are used in the manufacture of such products and as hereinafter provided for.

\* \* \* \* \* \*

"(5) Drawback.

"In the case of distilled spirits tax-paid and used as provided in this subsection, a drawback shall be allowed—

\* \* \* \* \* \*

"Such drawback shall be due and payable quarterly upon filing of a proper claim with the Secretary. No claim under this subsection shall be allowed unless filed with the Secretary within the three months next succeeding the quarter for which the drawback is claimed."

"§ 3772. Suits for refund—(a) Limitations (1) Claim.

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of the law in that regard and the regulations of the Secretary established in pursuance thereof."

Treasury Regulations 29, promulgated pursuant thereto, contain the following pertinent provision:

"Terms Used in the Statute.
* * *

"(d) 'Filed'—A claim for drawback shall be deemed to have been 'filed' when it is delivered to the office of the proper district supervisor, Alcohol Tax Unit, and by that office received." 26 C.F.R. § 197.12 (1953 Rev.).

In order to qualify for the refund it was necessary for the plaintiff to file its claim on or before June 30, 1952, and the sole issue raised by the suit is whether this was done.

From the evidence it appeared that the alcohol in question was used by the plaintiff at its Hendler Creamery Division in Baltimore, Maryland. Late in May, Mr. George Kommalin, Assistant Secretary of that Division, completed an official form, No. 843 of the United States Treasury Department, for the refund except for the insertion of the day of the month and the signature of the executing officer of the plaintiff. He then mailed it to the plaintiff's offices in New York City for execution.

In New York the claim was signed by N. L. Camp, Assistant Treasurer of the plaintiff. A cover letter was written by R. Woodbury of the plaintiff's General Controller's Office, Tax Division. The claim and the letter were inserted in a large brown envelope. No postage stamps were affixed to the envelope but it was put through a postal meter machine rented from the postal authorities, as a result of which there appears printed at the top of the envelope the date "June 6, 1952" and the postage amount ".09". At the same time the machine printed an advertising slogan to the left of the above data which read "Proper Infant Nutrition Insures Health and Growth". The envelope bore the address "District Supervisor, Alcohol Tax Unit, Baltimore, Maryland," and the plaintiff's return address appeared in the upper left hand corner.

The plaintiff's customary practice was to have a bonded contractor transport its outgoing mail from its offices to the post office station. The whereabouts of the envelope and its contents are unknown after its stamping, but it came into the hands of a clerk in the central filing office of the Alcohol Tax Unit where mail is customarily received on December 4, 1952, at which point the envelope was marked with a rubber stamp "Received Dec 4 1952 Asst. Dist. Commissioner A & T Tax Division Baltimore, Md." It was then sent to the section where drawback claims were considered, received by a secretary there and entered in a record maintained for the purpose by her. There is no question as to the propriety of the plaintiff's claim, but the District Supervisor refused to pay it because he deemed that he lacked authority to do so since it was not received by him prior to June 30, 1952.

The defendant concedes that the claim was received by way of the mails, the question arising—when was it mailed and when was it received?

Although it is possible to alter the meter machine so as to change the dating stamp, such unusual action upon the part of the plaintiff is completely negatived by a number of factors. The advertising slogan printed on the envelope was discontinued shortly after June 6, 1952 and on or about December 4, 1952, an entirely different slogan was in use. Of course, it could be said that an employee of plaintiff bent on falsifying the date on this envelope might have changed the slogan slugs of type, but that is improbable. The regulations of the Post Office Department require that the current date should be stamped by the meter machine. In fact, if meter stamped mail carries an old date it is held for postage due and none was required on this envelope. The evidence further disclosed that a carbon copy of the cover letter signed by Mr. Woodbury was received by Mr. Kommalin at his office in Baltimore on the morning of June 7, 1952, a Saturday, and that it was Mr. Kommalin's practice to

go to his office each Saturday morning for the specific purpose of reading his mail and to attend to other details of his work.

Direct evidence of mailing is almost impossible to obtain in cases like this where the dispute is over the mailing and receipt of one of the hundreds of pieces of mail that daily leave a large office like the plaintiff's. The plaintiff frankly concedes that it has no direct evidence of mailing the claim. Instead, it relies on evidence of office habit or routine.

█ There are two views as to the *quantum* of evidence which must be produced before evidence of habit or custom can supply a proper foundation for the inference that the custom was followed in the particular instance in question. The more prevalent rule requires that evidence of custom must be accompanied by some corroborating circumstance designed to show that the custom was in fact carried out on the specific occasion. Cook v. Phillips, E. & A.1932, 109 N.J.L. 371, 162 A. 732, 86 A.L.R. 539; Borgia v. Board of Review, App.Div.1952, 21 N.J.Super. 462, 91 A.2d 441; Tyree, Evidence, 8 Rutgers Law Review 222, 232 (1953); Annotation 1933, 86 A.L.R. 541. Other authorities have held that evidence of the custom alone is enough to support an inference that behavior on a specific occasion conformed to it. Myers v. Moore-Kile Co., 5 Cir., 1922, 279 F. 233, 25 A.L.R. 1; Annotation 1923, 25 A.L.R. 9; Annotation 1933, 86 A.L.R. 541. The latter view is the more modern one and is receiving greater support today. Model Code of Evidence, Rule 307; Uniform Rules of Evidence, Rule 49.[1] Under the more modern and sounder view, then, plaintiff need not prove corroboration of its office custom in order to establish that its custom was carried out

in this particular instance. And under a liberal interpretation of Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C., it would appear to be within this court's power to relieve plaintiff of that burden even though New Jersey law still requires it. See Green, Federal Civil Procedure Rule 43(a), 5 Vanderbilt Law Review 560 (1952); Myers v. Moore-Kile Co., supra. Compare, however, Wright v. Wilson, 3 Cir., 1946, 154 F.2d 616, 170 A.L.R. 1237, certiorari denied 1946, 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640.

█ The evidence in this case, as above detailed, indeed, even fulfills the requirement of corroboration of custom, habit and practice, particularly with the evidence of Mr. Kommalin that he received a carbon copy of the cover letter of June 7, 1952. Plaintiff has, by an overwhelming preponderance of the evidence, proved that the envelope containing the drawback claim was mailed from New York on June 6, 1952.

But, the defendant argues, the time of mailing is in any event no criterion for the claim must have been *received* by the District Supervisor on or before June 30, 1952, or he has no authority to pay it.

The United States can be sued only where there has been a strict compliance with the requirements and conditions of the statute under which consent to sue it is given. Defendant relies on the case of United States v. Lombardo, 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897, wherein it was said:

"The word 'file' was not defined by Congress. No definition having been given, the etymology of the word must be considered and ordinary meaning applied. * * * Filing, it must be observed, is not complete until the document is de-

1. New Jersey, long a champion of the corroboration requirement, [see cases cited, supra, and Notkin v. Brookdale Gardens, App.Div.1953, 28 N.J.Super. 9, 99 A.2d 825] may soon change its law in this regard. The Report of the Committee on the Revision of the Law of Evidence to the Supreme Court of New Jersey issued May 25, 1955 on page 100 recommends that Rule 49 of the Uniform Rules of Evidence be adopted in the proposed revision of the New Jersey evidence law, thus dropping the corroboration requirement.

livered and received. 'Shall file' means to deliver to the office, and not send through the United States mails. * * * A paper is filed when it is delivered to the proper official and by him received and filed."

It also cited Ritter v. United States, 3 Cir., 1928, 28 F.2d 265; Underwriters, Inc., v. Commissioner, 3 Cir., 1954, 215 F.2d 953 and Hilker & Bletsch Co. v. United States, 7 Cir., 1954, 210 F.2d 847 as supporting the absolute necessity for the strict compliance with statutory requirements within the time for filing.

There can be no quarrel with the decisions in these cases. In the Lombardo case the defendant had been indicted in the Western District of Washington for failure to file a report. He challenged the venue there and the Court held with him that the place of *filing* was the office of the Government in the District of Columbia and that the offense of the failure to file must be tried there. It rejected the contention of the Government that the defendant could have complied with the requirement of filing the report by mailing it and in so doing used the cited language.

In the Underwriters and Ritter cases proper filing took place past the statutory limit, and in the Hilker & Bletsch Co. case the document in question actually left the hands of the person required to send it too late, albeit by only a very short time, to be received by the official within the statutory period and the court declined to give relief based upon equitable considerations. Of course, there is no holding that the delivery that constitutes filing may not be accomplished by the use of the mail. In fact it is probably almost universally so done. All the evidence in this case points to the fact that the claim was mailed by the plaintiff on June 6, 1952. The presumption of delivery in the ordinary course of the mails that arises upon proof of mailing, although rebuttable, is one not easily overcome. Arkansas Motor Coaches v. Commissioner of Internal Revenue, 8 Cir., 1952, 198 F.2d 189; Crude Oil Corp. of America v. Commissioner of Internal Revenue, 10 Cir., 1947, 161 F.2d 809. This strong presumption is reinforced in this case by the unusual circumstance that the envelope in question was actually received in the mails.

When the plaintiff failed to receive any acknowledgment of the receipt of its claim inquiry was made and it was informed that the claim had not been received. A search was instituted in the Baltimore Tax Offices, but no evidence of its receipt was found.

The defendant read into the record the depositions of three of its Baltimore employees. The mail clerk, whose duty it was to stamp received mail and route it to the proper office could give no direct testimony of the receipt of the plaintiff's claim on December 4, 1952, even though it had been reported missing and emphasis had been laid on the need for search for it in the previous months. All that she could say was that since it had been stamped on December 4, 1952, it must have been received that day. From the description of the mail handling practices given by the defendant's witnesses it would seem more probable that the plaintiff's claim was received in June, 1952 at the Baltimore offices, but was there misplaced only to be found in the following December. The evidence was insufficient to overcome the presumption of receipt.

Since it is settled that the plaintiff's statutory duty of "filing" a claim before the end of June, 1952 was performed when the claim was delivered in the ordinary course of the mails to the tax office, United States v. Lombardo, supra; Hilker & Bletsch Co. v. United States, supra; Poetz v. Mix, 1951, 7 N.J. 436, 442, 81 A.2d 741, it appears that the plaintiff should prevail and judgment should be entered in its favor for the amount of $2,958.30.

The foregoing shall be considered to be findings of facts and conclusions of law in satisfaction of the requirements of Rule 52(a) of the Federal Rules of Civil Procedure.

An order in conformity herewith should be submitted by the plaintiff approved only as to form by the defendant, reserving to it its objection to the decision, or notice should be given of settlement of an order.