**UNITED STATES of America,**
**Appellee,**

v.

**George Anderson BOWEN, Jr.,**
**Appellant.**

**No. 17409.**

United States Court of Appeals
Third Circuit.

Argued Jan. 23, 1969.

Decided July 28, 1969.

Rehearing Denied Sept. 12, 1969.

---

Joseph R. McMahon, Lum, Biunno & Tompkins, Newark, for appellant.

Elliot Scher, Asst. U. S. Atty., Newark, David M. Satz, Jr., U. S. Atty., Newark, on the brief, for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and STAHL, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge

George Anderson Bowen, Jr., claiming to be a conscientious objector, was sentenced to five years imprisonment, the maximum term,[1] for failing to report for induction scheduled for December 29, 1965, in violation of 50 U.S.C. App. § 462.[2] A motion for a new trial or for a judgment of acquittal was denied. The following is a summary of the facts of this case:

*April 27, 1962:* Bowen registered with his local Selective Service Board. (Trial Transcript (TT) p. 5.) [3]

---

1. See United States v. Fallon, 407 F.2d 621, 624 (7th Cir.), cert. denied, 395 U.S. 908, 89 S.Ct. 1749, 23 L.Ed.2d 220 (1969).

2. This was appellant's second trial. The first one resulted in a hung jury.

3. The trial transcript is part of Appellant's Appendix. The pages in the transcript are separately numbered.

*July 13, 1964:* He was classified 1–A. (Minutes of Action (MA) contained in Appellant's Appendix; TT. pp. 6–7.)

*June 18, 1965:* After notice, Bowen appeared for and was given a preinduction physical. On the same date he was issued SSS Form 100, Classification Questionnaire, TT. p. 23, which he subsequently completed and returned. In that form Bowen signed his name after the following printed statement:

> I claim to be a conscientious objector by reason of my religious training and belief and therefore request the local board to furnish me a Special Form for Conscientious Objector (SSS Form No. 150). (Appellant's Appendix.)

*July 12, 1965:* Bowen was mailed the first of two SSS Forms 150, necessary for the local board to consider his claim for conscientious objector status. (TT. pp. 12–13.)

*November 22, 1965:* Because the board believed that Bowen may not have received or overlooked the SSS Form 150 sent on July 12, it sent another one. (TT. p. 13.) *Bowen testified that he did not receive either of the forms.*[4] (TT. p. 83.)

*December 14, 1965:* The board mailed Bowen an order to report for induction scheduled on December 29, 1965 (MA).

*December 15, 1965:* The board sent Bowen a notice informing him that he could attend a meeting of the board to be held on December 20, 1965 (TT. p. 37). No copy of this letter was adduced at trial. Bowen did not deny receipt of it. The Government's witness testified that the letter contained no specific reference to what the board might consider (i. e., Bowen's pending dependency claim or his claim for conscientious objector status), except to indicate that the board would meet "to discuss your case." (TT. p. 38.) Bowen did not appear at the December 20 meeting (TT. p. 38). Bowen testified that he felt all

his papers were in order and therefore he need not attend. (TT. p. 84.)

*December 22 1965:* The board sent Bowen the following (form) letter:

> Dear Mr. Bowen, Jr.
>
> This will advise you the recent evidence submitted concerning your case has been reviewed by this local board but it does not justify the re-opening of your case and reconsideration of your present classification.
>
> You will, therefore, *be subject to further processing for induction. Notices will be mailed to you in due course.*
>
> Very truly yours,<br>/s/ Lois R. Reilly<br>For the Chairman<br>Local Board No. 44

(Emphasis added; see Appellant's Appendix and TT. p. 40.)

We pause at this point in the recitation of the facts to comment on this letter. It stated that the board considered "recent evidence submitted concerning your case." We have reviewed the entire record, including the Selective Service file of the appellant, and as the testimony of the Government's witness indicated, no new evidence was submitted to the board for its consideration. Moreover, the last paragraph of the letter is especially troublesome. It intimates that there will be "further processing for induction" and that further notices will be sent. No further processing appears to have been required and nothing else was in fact mailed to appellant.

Although not raised by counsel, we cannot help but note the confusing nature of this letter. Had Bowen claimed that as a result of the letter he was uncertain about the continuing validity of the notice of induction, it may have been a sufficient defense going to the willfulness of his conduct. *Cf.* United States v. Rabb, 394 F.2d 230 (3d Cir. 1968). Although this issue is not

---

4. It should be pointed out that Bowen did not deny the receipt of any other forms sent by the local board.

dispositive of the appeal, we mention it because it raises the disturbing question as to whether it would comport with due process of law to uphold a criminal conviction predicated on failure to perform a duty where the notice regarding such performance may have been ambiguous.

We continue with the facts. Bowen failed to report for induction on December 29, 1965. Almost a year later, on December 1, 1966, Bowen went to the office of the draft board (TT. p. 46), after being visited at his home by an FBI agent (TT. p. 85). At the board's office he requested an SSS Form 150 for conscientious objectors. The clerk refused to give him the form (TT. pp. 45–47). Instead, the clerk, upon telephonic instructions from the state office, handed Bowen a notice to appear for induction the following day (TT. p. 47). Appellant did not report for induction the next day as ordered. The prosecution and conviction here, it should be noted, were for failure to report on the *first* scheduled date for induction, i. e., December 29, 1965.[5]

■ While not controlling, we pause once more to observe that the failure of the clerk to give Bowen an SSS Form 150 was in violation of a mandatory duty imposed by 32 C.F.R. § 1621.11. United States v. Stoppelman, 406 F.2d 127, 133 (1st Cir. 1969); United States v. William Kroll, 400 F.2d 923, 926 (3d

Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713 (1969).

A failure to give a registrant a requested SSS Form 150, *on or prior* to the scheduled date of induction, has been held to vitiate a conviction for failure to report for induction. Boswell v. United States, 390 F.2d 181 (9th Cir. 1968) (the request for the form was made following the notice of induction, on the day before the induction was scheduled); United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968) (the request was made on the day of induction by means of a written statement handed to the induction officer at the induction station).[6] Although United States v. McNeal, 1 Sel.Serv.L.Rep. 3227 (N.D.Cal.1968), held that a local board's failure to supply Form 150 *after* refusal to report for induction was fatal to a conviction, the Ninth Circuit, joined by the First Circuit, have subsequently ruled that despite a board's mandatory duty to furnish the form, failure to do so following a refusal to submit to induction does not remove the underpinning of a conviction for not reporting for induction. Palmer v. United States, 401 F.2d 226 (9th Cir. 1968); United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969).[7] At any rate, we reverse on other grounds.

Regardless of the December 1, 1966, refusal to supply the Form 150 *subsequent* to the failure to report for induction, counsel for appellant has argued,

---

**5.** Thus, we do not need to pass on the validity of the *second* notice of induction issued to appellant to report on December 2, 1966.

**6.** In Blades v. United States, 407 F.2d 1397 (9th Cir. 1969), the court refused to follow *Stafford* where appellant similarly handed the induction officer a statement on the day of induction that he had mailed Form 150 to his board the night before. The board did not receive the form until the day after the scheduled induction.

In United States v. Hinch, 292 F.Supp. 696 (W.D.Mo.1968), in which the court followed *Stafford*, a notice to report for induction on January 11, 1968, was issued December 22, 1967. On January 8, 1968, appellant requested and received the Form

150, and he did not return the executed form until *after* the refusal to report for induction. The court held the application for conscientious objector status should have been considered by the board. For a like decision on similar facts, also relying on *Stafford*, see United States v. Blaisdell, 294 F.Supp. 1303 (D.Me.1968). In United States v. Stoppelman, 406 F.2d 127, 131 n. 7 (1st Cir. 1969) (see text at note 7 *infra*), the First Circuit considered *Blaisdell* as a pre-refusal-of-induction type case.

**7.** Cf. United States v. William Kroll, 400 F.2d 923, 925–926 (3d Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713 (1969).

and we agree, that the board obviously had a mandatory duty to supply Bowen with the form *prior* to the notice of induction, 32 C.F.R. § 1621.11, and that the failure to do so would vitiate his conviction. Boswell v. United States, *supra.* The Government asserts that the board fulfilled this duty by mailing blank SSS Forms 150 to Bowen on two occasions, July 12, 1965, and November 22, 1965, before issuing the order to report for induction. Bowen denied receipt of the form at either time and claimed, therefore, that the board had not complied with this mandatory duty.

On this issue the court below charged the jury as follows:

> Admittedly all matters sent to the defendant were sent by ordinary mail. None of it was returned, as I recall, as undelivered by the postal authorities. There is no requirement in the law, ladies and gentlemen, that notices must be sent by certified mail, or registered mail, or in any special manner. It is perfectly proper to use ordinary mail. And the presumption is that mail so sent is received. *Indeed, under a Selective Service Regulation the mailing of any order, notice, or blank form, to a registrant at the address last reported by him to his local board, shall constitute notice to him of the contents of the communication whether he actually receives it or not.*
>
> Of course, it is for you to determine and evaluate the facts of the case. But you are not to concern yourselves with the propriety of the defendant's classification as a 1–A registrant by his local board. \* \* \* (Emphasis added; TT. pp. 113–114.)

The trial judge, in the italicized part of the charge, which the Government specifically requested, was referring to the Selective Service Regulation, entitled "Communication by Mail." 32 C.F.R. § 1641.3:

> Communication by Mail. It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. *The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not.* (Emphasis added.)

■ From our reading of the charge, it is unclear whether the jury was instructed that the critical issue of receipt of the conscientious objector forms was governed by a rebuttable presumption,[8] *viz.*, that mail sent is presumed to be received unless the jury believes the evidence to the contrary, *or* that under the applicable Selective Service regulation an "irrebuttable presumption" controlled. As we have no way of knowing which alternative instruction the jury selected or followed in its determination of appellant's guilt, we are required to review the validity of both aspects of the charge. If *either* ground is invalid, the conviction must be reversed: Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969);[9] Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); New York Times v. Sullivan, 376 U.S. 254, 284, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Yates v. United States, 354 U.S. 298, 77 S.Ct.

---

8. We note that nowhere in the charge did the court explain the operative effect of a presumption. When it is required that a jury be told about presumptions, it should not be supposed that the ordinary juror understands the complexity of that legal term of art. See Soules, Presumptions in Criminal Cases, 20 Bay.L.Rev. 277, 285 (1968); Mathes, Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 51 (1961); Morgan, Instructing the Jury Upon Presumptions and Burden of Proof, 47 Harv.L.Rev. 59 (1933).

9. "It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside. See, e. g., Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)." 395 U.S. at 31, 89 S.Ct. at 1545.

1064, 1 L.Ed.2d 1356 (1957); [10] Cramer v. United States, 325 U.S. 1, 36 n. 45, 65 S.Ct. 918, 89 L.Ed. 1441 (1945); Williams v. North Carolina, 317 U.S. 287, 292, 63 S.Ct. 207, 87 L.Ed. 279 (1942); Stromberg v. California, 283 U.S. 359, 367–368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

Since it would seem the trial judge was required to charge in accordance with the mail regulation (or find that the regulation was subject to a legal infirmity as we ultimately determine), and since this was the more stringent part of the charge, we examine it now.[11]

The regulation in effect creates an "irrebuttable or conclusive presumption"[12] that mail sent is received. Such a presumption would make irrelevant any evidence the defendant-appellant did offer or might have offered to prove he did not receive the forms. Even if we were not dealing with a regulation that involved the critical issue of notice, the regulation cannot stand. We believe the regulation to be unconstitutional as violative of the due process clause of the Fifth Amendment insofar as it purports to establish such an irrebuttable presumption.

[4] No administrative agency, nor even a legislature, may make the proof of one fact conclusive proof of another fact in any proceeding, civil or criminal, to the detriment of a private party.[13] Such a regulation is especially offensive when the disproof of the latter "fact" may be critical in the establishment of a defense in a criminal prosecution. This is our case.

If Bowen could prove that he did not receive the SSS Form 150, then the board did not fulfill its mandatory duty to supply it, thus nullifying the validity of the induction notice Bowen is charged to have ignored. If the jury reached

---

10. "* * * [W]e think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. * * *" 354 U.S. at 312, 77 S.Ct. at 1073.

11. While no objection was made to the trial court's charge, because of the construction we place on it, "we think the language of the charge constituted 'plain error' of a prejudicial sort, which a reviewing court may and should correct as authorized by the savings clause of Rule 52(b), Federal Rules of Criminal Procedure * * *." United States v. Vitiello, 363 F.2d 240, 243 (3d Cir. 1966). See also Proctor v. United States, 404 F.2d 819, 822 (D.C.Cir. 1968); United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968). Cf. Howze v. United States, 409 F.2d 27, 28 (9th Cir. 1969).

12. We agree with Professor Wigmore when he says:

In strictness, there cannot be such a thing as a "conclusive presumption." Wherever from one fact another is said to be conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that, where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; [footnote omitted] and to provide this is to make a rule of substantive law, and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence. * * * 9 Wigmore, Evidence § 2492 (3d ed. 1940).

In deference to Professor Wigmore, we have surrounded with quotation marks the term "irrebuttable or conclusive presumption," an unwanted and illegitimate child conceived from the illicit relationship between the rules of evidence and the rules of substantive law. See discussion of Heiner v. Donnan, infra.

13. We do not hold that every "conclusive presumption" is necessarily unconstitutional. It is only so when such a presumption adversely affects the rights of private parties. The Government may have valid policy reasons for binding itself to a conclusive or irrebuttable presumption, see United States v. Jones, 176 F.2d 278, 288–289 (9th Cir. 1949), or a statute in the form of a conclusive presumption may be intended to fix a proper rule of substantive law, see Bowers v. United States, 226 F.2d 424 (5th Cir. 1955); City of New Port Richey v. Fidelity & Deposit Co., 105 F.2d 348, 351, 123 A.L.R. 1352 (5th Cir. 1939); Annot., 13 L.Ed.2d 1138, 1146 (1965).

its decision based upon the aspect of the charge patterned after the Selective Service regulation governing the receipt of mail, the jury was prohibited from considering Bowen's claimed defense that he did not receive the forms, even if they were inclined to believe him.

We are dealing here with an "irrebuttable presumption"; therefore we are precluded from applying the due process rational connection test governing "rebuttable presumptions." That test requires "that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. * * *" Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, (1969); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); United States v. Margeson, 259 F.Supp. 256, 269 (E.D.Pa.1966); Government of Virgin Islands v. Torres, 161 F.Supp. 699 (D. V.I.1958) (opinion by Judge Maris); Morgan, Some Observations Concerning Presumptions, 44 Harv.L.Rev. 906 (1931); Morgan, Further Observations on Presumptions, 16 S.Cal.Rev. 245 (1943); Annot., 13 L. Ed.2d 1138 (1965); Annot., 162 A.L.R. 495 (1946).

A rational connection of this nature may very well be present here, but there is an immeasurable difference between the operative effect of a rebuttable presumption and a rule that absolutely bars a party from presenting any evidence on an issue whatsoever. To apply the same test to both would give a legislature or an administrative agency the power to deprive a criminal defendant or a civil litigant of his day in court on the basis of the *probability* of a rational connection.[14]

The observations we make today are not new. In 1910, Justice Lurton penned these oft-cited words:

That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some *rational connection* between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. *So, also, it must not, under the guise of regulating the presentation of evidence, operate to preclude the party from the right to present his*

14. Justice Black takes the position that any presumption which lends support for a conviction is a constitutionally impermissible interference with the institutional power of the jury to alone determine the facts of a case. In *Gainey*, Justice Black said,

 * * * I think it flaunts the constitutional power of courts and juries for Congress to tell them what "shall be deemed sufficient evidence to authorize conviction." And if Congress could not thus directly encroach upon the judge's or jury's exclusive right to declare what evidence is sufficient to prove the facts necessary for conviction, it should not be allowed to do so merely by labeling its encroachment a "presumption." * * * United States v. Gainey, 380 U.S. 63, 77, 85 S.Ct. 754, 763 (1964) (dissenting opinion).

In *Leary*, Justice Black reiterated his position, saying,

 * * * Under our system of separation of powers Congress is just as incompetent to instruct the judge and the jury in an American court what evidence is enough for conviction as the courts are to tell Congress what policies they must adopt in writing criminal laws. The congressional presumption, therefore, violates the constitutional right of a defendant to be tried by jury in a court set up in accordance with the commands of the Constitution. It clearly deprives a defendant of his right not to be convicted and punished for a crime without due process of law, * * * Leary v. United States, 395 U.S. 6, 55, 89 S.Ct. 1532, 1558, (1969) (concurring opinion).

*defense to the main fact thus presumed.*

If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him. Mobile, J. & K. C. R. R. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910). (Emphasis added.) (*See also* Manley v. Georgia, 279 U.S. 1, 5–6, 49 S.Ct. 215, 73 L.Ed. 575 (1929).)

In Carolene Products Co. v. McLaughlin, 365 Ill. 62, 5 N.E.2d 447, 450 (1936), the Illinois Supreme Court declared unconstitutional a provision of the state Filled Milk Law which "conclusively presumed" the elements of the seller's fraud and adulteration whenever the described product was sold. The Illinois Supreme Court stated:

> The Legislature does not possess the power to declare what shall be conclusive evidence of a fact as such a declaration would be an invasion of the power of the judiciary. * * * [A] statute creating a presumption which operates to deny a fair opportunity to rebut it contravenes the due process clause of the Fourteenth Amendment to the Federal Constitution.

In another state court decision, Juster Bros. v. Christgau, 214 Minn. 108, 7 N.W. 2d 501, 507 (1943), the Supreme Court of Minnesota held unconstitutional an unemployment compensation regulation which prohibited an employer from proving any employee's disqualification under the act if the employer, at the time of separation, failed to notify the employee of the grounds for such disqualification. The court said:

> Even the legislature itself does not have the power to declare what shall be conclusive evidence contrary to fact. * * * 'The legislature can-

not in this manner provide for the arbitrary exercise of power, so as to deprive a person of his day in court to vindicate his rights. And the law which closes his mouth absolutely when he comes into court is the same, in effect, as the law which deprives him of his day in court.' * * * Clearly, what the legislature cannot do itself is ultra vires an administrative body with only delegated legislative power.

In Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926), the Supreme Court held a state inheritance tax statute which "conclusively presumed" that any gift made within six years of the donor's death was made in contemplation of death, and therefore subject to the tax, unconstitutional as violative of the due process clause of the Fourteenth Amendment.

A similar federal taxing provision was held to violate the Fifth Amendment due process clause. It was not "material that the Fourteenth Amendment was involved in the *Schlesinger* Case, instead of the Fifth Amendment, as here. The restraint imposed upon legislation by the due process clauses of the two amendments is the same. * * * *"* Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 361, 76 L.Ed. 772 (1932). Justice Sutherland, speaking for the Court, commented in *Heiner* on the argument that a legislature has the power to enact a "conclusive presumption" which is actually a rule of substantive law:

> [W]hether the * * * presumption be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality, and the result is the same, unless we are ready to overrule the *Schlesinger* case, as we are not; for that case dealt with a conclusive presumption, and the court held it invalid without regard to the question of its technical characterization. This court has held more than once that a statute creating a presumption

which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. * * *

If a legislative body is without power to enact as a rule of evidence a statute denying a litigant the right to prove the facts of his case, certainly the power cannot be made to emerge by putting the enactment in the guise of a rule of substantive law. 285 U.S. at 329, 52 S.Ct. at 362.[15]

We wish to make clear that what is defective about the Selective Service mail regulation, 32 C.F.R. § 1641.3, is that it is conclusive.

United States v. Griffin, 378 F.2d 899 (2d Cir. 1967), cited by the Government, is inapposite. There the court relied upon a regulation that the mailing of the Classification Questionnaire to the last known address constitutes notice that unless information supporting an exemption is received within a certain time the registrant will be classified 1-A. 32 C.F.R. § 1622.1(c). In Griffin, however, the defendant did not deny receiving the mailed questionnaire.

Several other selective service cases in which convictions were predicated on notices the defendants denied receiving, United States v. DeNarvaez, 407 F.2d 185 (2d Cir. 1969), petition for cert. filed, 37 U.S.L.W. 3452 (May 21, 1969) (No. 1417); United States v. Davis, 279 F.Supp. 920 (D.Conn.1967), aff'd per curiam, 390 F.2d 879 (2d Cir.), cert. denied, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968); and Whitney v. United States, 328 F.2d 888 (5th Cir. 1964), are also distinguishable. Each of these cases relied on the *rebuttable* presumption of the receipt of mail, see note 17 *infra,* and not on the "irrebuttable presumption" contained in the district court's instructions to the jury in the instant case, predicated directly on the Selective Service mail regulation, 32 C.F.R. § 1641.3.

In *DeNarvaez,* a nonjury trial, defendant denied receiving a number of notices sent to him at different addresses as he moved and traveled from time to time back and forth from the United States to South America. The court said that the defendant's denial of receipt of the various letters sent by the local board was "an issue of credibility, the trial court, uniquely situated to resolve it, could find that his claim was untrue." 407 F.2d at 188. The court said further: "If there were only one letter, perhaps we could credit the claim that it went astray. But as indicated above, there are too many notices unaccounted for. * * *" *Id.*

The court in *DeNarvaez* relied on United States v. Davis, *supra,* and Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). *Hagner,* following Rosenthal v. Walker, note 17 *infra,* articulated the rebuttable presumption rule that a letter properly mailed was actually received by the person to whom it was addressed and that the burden is on the addressee to show the contrary. 285 U.S. at 430–431, 52 S.Ct. 417.

In United States v. Davis, *supra,* also a nonjury case, the defendant asserted that he failed to receive his classification notice and other notices and that this should be a defense to an indictment for failure to comply with an order to report for a physical examination. In disposing of this defense, the district court said:

The Court gives no credence to the defendant's contention he did not receive notice of his classification and his administrative remedies. The defendant's history of inordinate indifference to many of the board's orders

---

15. Although we deal here with a "conclusive presumption" established by regulation, we note that common law presumptions similarly are subject to constant vigilance and if newly established facts detract from their *"clearest* expediency and *soundest* policy," due process will require their prompt elimination. United States v. Provident Trust Co., 291 U.S. 272, 282, 54 S.Ct. 389, 78 L.Ed. 793 (1934) (Emphasis added). *See also* Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532 (1969).

and communications, alone, is adequate justification for this finding. See also, 32 C.F.R. § 1641.3 (1962), Selective Service Regulations. * * * 279 F.Supp. at 922.

While the court cited the Selective Service mail regulation which we here hold to have been an improper part of the district court's charge, it is apparent from an examination of the court's opinion in *Davis* that since it refers to the credibility of the defendant, it did not rely on any "irrebuttable presumption" created by 32 C.F.R. § 1641.3 but rather on the common law rebuttable presumption concerning the receipt of mail.

*Whitney* followed Hagner v. United States, *supra*, and therefore must be classified as a rebuttable presumption case.

It can thus be seen that in none of the above cases was the Selective Service mail regulation utilized in the form of an irrebuttable presumption in a charge to a jury as in the appeal we have under consideration.[16]

There would be nothing wrong with a regulation based upon today's human experience which would establish the *rebuttable* presumption that mail sent is received.[17] Thus the portion of the lower court's charge stating that "the presumption is that mail * * * sent is received," standing alone, would not render the charge defective.

Having determined that it was improper for the lower court to cite in its charge the Selective Service mail regulation, 32 C.F.R. § 1641.3, in a way that clearly made it seem to be an irrebuttable presumption, we are compelled to reverse the conviction because of the possibility that this portion of the charge may have been at the root of the jury's verdict. Leary v. United States, *supra* note 9; Yates v. United States, *supra* note 10.[18]

Following his conviction, appellant had moved for a new trial or for a judgment

16. From *Griffin* and the other cases and from a reading of 32 C.F.R. §§ 1622.1(c) and 1641.3, we recognize that the understandable reason behind the mail regulations is to try to make sure that registrants keep their local boards informed of changes of address. Yet there should be other effective means of enforcing this policy without creating invalid "irrebuttable presumptions" that, as in this case, work to the detriment of the Selective Service system. Cf. Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969), upholding a conviction for failure to comply with a notice of induction where the defendant had failed to keep the board informed of his current address and the court concluded the board had done all that was reasonably required to determine the registrant's whereabouts.

17. See Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395 (1884); Charlson Realty Co. v. United States, 384 F.2d 434, 442, 181 Ct.Cl. 262 (1967); National State Bank of Newark v. Terminal Construction Corp., 217 F.Supp. 341, 355 (D. N.J.1963), aff'd per curiam, 328 F.2d 315 (3d Cir. 1964); Borden Co. v. United States, 134 F.Supp. 387 (D.N.J.1957); Lawson, The Law of Presumptions: A Look at Confusion, Kentucky Style, 57 Ky.L.Rev. 7, 40 (1968).

In *Rosenthal* the Supreme Court said:
> The rule is well settled that if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed. * * * Huntley v. Whittier, 105 Mass. 391. As was said by Gray, J., in the case last cited, "the presumption so arising *is not a conclusive presumption of law*, but a mere inference of fact, founded on the probability that the officers of the government will do their duty and the usual course of business, and when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letters were actually received or not." (Emphasis added.) 111 U.S. at 193–194, 4 S.Ct. at 386.

18. Cf. Boswell v. United States, 390 F.2d 181 (9th Cir. 1968), a selective service case, where a conviction in a nonjury trial was struck down because it was not clear on which of two possible grounds the court based its judgment, where one of the grounds was erroneous.

of acquittal. We do not believe it was error to deny the latter relief. Because of the defective charge, the motion for a new trial should have been granted.[19]

Appellant's conviction will be reversed and the case remanded to the district court for action consistent with this opinion.

McLAUGHLIN, Circuit Judge (dissenting).

The majority opinion concludes that the lower court's charge to the jury was vitally defective. Basically, the holding is that it was plain error for the lower court to cite in its charge the Selective Service mail regulation [1] "in a way that clearly made it seem to be an irrebuttable presumption." The entire foundation of the opinion is the proposition that because of this "irrebuttable presumption" the jury was precluded from considering Bowen's claimed defense that he did not receive SSS Form 150 (conscientious objector).[2] On that issue the majority states that:

"* * * it is unclear whether the jury was instructed that the critical issue of receipt of the conscientious objector forms was governed by a rebuttable presumption, (footnote omitted) viz. that mail sent is presumed to be

received unless the jury believes the evidence to the contrary, *or* that under the applicable Selective Service regulation an 'irrebuttable presumption' controlled."

The judge charged as follows:

"Basically, he seeks to justify his conduct on the basis of his religious scruples and the fact that he was his mother's sole support. He admitted receiving the classification questionnaire; also the notice to appear and report for induction. He also admits receiving a notice to attend a meeting of his local draft board, but that he did not attend said meeting.

"The defendant denies, however, that he received the conscientious objector forms, No. 150.

"Admittedly all matters sent to the defendant were sent by ordinary mail. None of it was returned, as I recall, as undelivered by the postal authorities. There is no requirement in the law, ladies and gentlemen, that notices must be sent by certified mail, or registered mail, or in any special manner. It is perfectly proper to use ordinary mail. And the presumption is that mail so sent is received. Indeed, under a Selective Service Regulation the mailing of any order, notice or blank form,

19. While the Government may now proceed to try appellant anew, we believe, as an alternative, that it would not be inappropriate to afford him the opportunity to execute the conscientious objector form, SSS 150, and to process it in accordance with the Selective Service regulations. Here is a man who had indicated to the local board in his Classification Questionnaire that he desired to claim conscientious objector status but whose claim has never reached the point of consideration on the merits. It may be that on the facts here, under proper instructions, appellant would be found guilty again. At this particular stage, however, under the view we have taken, he has not been properly convicted. It would not appear to be inconsistent with the Selective Service laws to let Bowen fill out the conscientious objector form for whatever consideration the local board may in its discretion give it under existing regulations.

1. 32 C.F.R. § 1641.3 reads as follows: "Communication by Mail. It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the commuunication, whether he actually receives it or not."

2. The charge to the jury on the issue of receipt is made a primary importance since the majority contends that the local board had a mandatory duty to supply the form to Bowen (32 C.F.R. § 1621.11) and, therefore, if Bowen could prove he did not receive the form, then the board did not fulfill this mandatory duty "thus nullifying the validity of the induction notice Bowen is charged to have ignored."

to a registrant at the address last reported by him to his local board, shall *constitute notice to him of the contents of the communicaton, whether he actually receives it or not.*

"*Of course, it is for you to determine and evaluate the facts of this case.*" (Appendix for Appellant pp. 113, 114) (Emphasis supplied).

The court opinion centers on the reference to the regulation (32 C.F.R. § 1641.-3) that the mailing of any order, notice or blank form to a registrant at his last reported address *constitutes notice to him of the contents of the communication* whether he actually receives it or not. Said opinion calls this an irrebuttable or conclusive presumption of *receipt* of the forms by Bowen. The majority confronted by a line of cases involving convictions based on notices the defendants denied receiving, finds that in those decisions a rebuttable presumption was relied on, however, in this single instance for some unexplained reason the majority makes a flat pronouncement that an irrebuttable presumption of receipt was created. See United States v. DeNarvaez, 407 F.2d 185 (2 Cir. 1969), petition for cert. filed, 37 U.S.L.W. 3452 (May 21, 1969), (No. 1417) ; United States v. Davis, 279 F.Supp. 920 (D.Conn.1967), aff'd per curiam, 390 F.2d 879 (2 Cir.), cert. denied, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968) ; Whitney v. United States, 328 F.2d 888 (5 Cir. 1964). Nowhere in the regulation is there such an assertion. Nowhere is there any hint that receipt of the communication could not be disputed. It is for this reason in the trial judge's sole allusion to the regulaton, he stated that under it "the mailing * * * to a registrant shall *constitute notice to him of the contents of the communication,* whether he actually receives it or not." The judge immediately thereafter specifically instructed the jury as follows: "*Of course, it is for you to determine and evaluate the facts of this case.*" (Emphasis supplied). The most important fact question for the jury was to decide whether Bowen did receive the communication.

A common sense reading of the charge, as opposed to the strained interpretation of an isolated part of it, indicates unmistakably that the jury was not misled. Even if the regulation standing alone could have been possibly misinterpreted, the overriding simple mandate of the court to the jury was to find out what the fact was as to receipt by Bowen of the form. The court fairly outlined the evidence on the issue of receipt and correctly framed that issue for the jury. The latter was in no way "prohibited from considering Bowen's claimed defense that he did not receive the forms * * *."

The regulation has been in effect since 1948. During all that time until now, there has never been any pretension that it was unconstitutional; never any theorizing that it set up a mandate that mailing of any order produced a plenary assumption of receipt to which there was no defense. That contention appears for the first time, over twenty years later, in the amazing, offhand majority pronouncement which so claims. Impartial analysis of the operative effect of the regulation affirmatively shows that it comprehends no attempt whatsoever to create a conclusive presumption of *receipt* from the mailing of the communication. As I see it that ruling is completely unwarranted.

The directive of the regulation is that mailing of the communication constitutes notice of its contents whether actually received or not. The regulation does not say or imply that the mailing is absolute evidence of *receipt* of the particular communication by the registrant. And the precise issue before us is receipt of the form by Bowen and not the latter's presumed knowledge of the contents of the communication. (See Footnote 2). While there is a wealth of miscellaneous citations in the majority opinion there is not one cited as deciding that the regulation in question makes the mailing of the communication unimpeachable regarding its receipt. Nor is there any Selective Service administrative history there mentioned or found by me which suggests support for that majority view.

**1280**

The sentence imposed upon the registrant was five years confinement. Under the liberal Federal parole provisions there undoubtedly would be much less time actually served. Having in mind the obvious factual situation revealed by this appeal, the sentence was reasonable. It offers no excuse for unwarranted indirect interference by this court.

From the substantial evidence in this appeal, the jury was fully justified in deciding that Bowen received SSS Form 150. See United States v. McQueary, 408 F.2d 493 (9 Cir. 1969).

I would affirm the conviction.