**UNITED STATES of America,**
**Appellee,**

v.

**David B. STOPPELMAN, Defendant,**
**Appellant.**

**No. 7174.**

United States Court of Appeals
First Circuit.

Jan. 16, 1969.

Edward L. Richmond, Boston, Mass., with whom Parsons, Bloom, Richmond & Del Vecchio, Boston, Mass., was on brief, for appellant.

Edward F. Harrington, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, WOODBURY *, Senior Circuit Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

This appeal from a conviction for refusal to report for induction into the armed forces centers mainly on the question whether or not appellant made a timely written request to his draft board to reopen and reconsider his classification.

Appellant was first classified in 1965 and given a student deferment.[1] This was changed to 1–A in March, 1967, the board having no information that appellant was still a student. No appeal was taken and appellant subsequently took his physical examination and was found acceptable for induction.

On October 2, 1967 the board issued an order to appellant, addressed to his home in Newton, Massachusetts, to report for induction on October 30. On the same day appellant, then in California, wrote his parents that he had come to a decision that he "simply cannot co-operate with the machinery for the war and am going to return my draft-card." He asked his parents to obtain the names and addresses of the local board members so he could write to them personally. Shortly after receiving

this letter, appellant's father visited the local board clerk, and, deeply concerned, asked what could be done. According to the father's testimony, the clerk replied that nothing could be done there, that the father should mail the notice to appellant and have his case transferred to San Francisco. There was no testimony by the father as to any talk of reopening appellant's classification and the clerk remembered none. There is a conflict in the testimony, appellant's father saying that he read the letter to her and the clerk saying that it had not been read. There was no other alleged conversation relating to names and addresses of the board members. Appellant's father did not leave the letter with the clerk.

Appellant shortly returned home, had consultations with his parents and with two Rabbis, and on October 20, 1967 visited his local board. He handed the clerk a letter and at the same time turned in his Notice of Classification and his Registration Certificate. The letter referred to United States participation in the war in Vietnam as "criminal" and to the Selective Service System as furnishing the "resources for this action and other suppressions of self-determination in the world." It then declared that appellant would not cooperate with the Selective Service System and would accept no classification or deferment "which implies my consent to its right to function."[2] Appellant testified that he asked the clerk to bring the letter to the attention of the board. The clerk testified that appellant said

---

* Sitting by designation.

1. Appellant returned his completed Classification Questionnaire Form on February 23, 1965. He made no claim for conscientious objector status in the space provided.

2. This part of the letter is the following:
"Apart from laws exists Law: Love thy neighbor as thyself! My first allegiance is to my human citizenship. I cannot relinquish to others my responsibility. My conscience exists that I might declare I will not cooperate with

the Selective Service System as long as it operates for the sustainance (sic) of graceless criminality. I can accept no classification or deferment from the Selective Service System which implies my consent to its right to function.
"I am aware of the penalties prescribed by legislation regarding non-co-operation. The manner of protest, as you may wish to call it, that I have chosen is the only one consistent with my conscience. I do not regard this as a negative act, but as an affirmation of Humanity."

very little, that she did not recall any request to show the letter to members of the board, and that she said, "I hope you know what you are doing, David."

The clerk did not bring the letter to the attention of the board, which in fact had no meeting between that day and the date scheduled for induction, October 30. She called the deputy state director of the selective service system, Colonel Feeney, and informed him of the letter and appellant's return of his draft cards. He instructed her to file the letter and registration forms and, if appellant failed to report for induction on October 30, to notify the United States Attorney of appellant's delinquency. 32 C.F.R. § 1642.41.

Appellant did not report for induction on October 30 and the matter was referred to the United States Attorney. On December 20, 1967, appellant's counsel wrote to the local board, requesting a Special Form for Conscientious Objector (150). This was never issued.

Appellant's major contention is that the local board never held a meeting to decide whether or not it would reopen his 1–A classification. The basic regulation is set forth in the margin.[3] Our task is to assess the duty of the local board on the facts disclosed by the record as of October 2, when appellant's father visited the clerk; October 20, when appellant made his visit; and December 20, when counsel requested the conscientious objector form.

■ The father's visit on October 2 clearly imposed no legal requirement on the clerk. Appellant's letter to his par-

ents, even if the evidence showed conclusively that it was read to the clerk, was not a request for action of any kind. At most it contemplated a future communication to board members. Admittedly, the clerk could have suggested the filing of a form 150 and an effort to secure reopening of appellant's classification. But this is not to say that she was required to intervene with a registrant who had supposedly made up his mind to turn in his draft cards.

■ We have more difficulty with appellant's letter of October 20. It was a deliberate communication of his philosophy and intended action which, it seems to us in view of the serious consequences to the registrant, might well have been brought to the attention of board members. Some thoughtful probing of appellant's views might either have caused appellant to change them or to change his intended course of conduct by seeking reclassification as a Conscientious Objector.[4] If the board were convinced, the subsequent course of events would have been avoided. The localized emphasis of the Selective Service System ought to foster such efforts to avoid the inexorability of fate stemming from premature judgments based on misunderstanding of regulations which must seem incredibly complex to the layman.

■ We would say that clerks file such communications without calling them to the board members' attention at considerable risk to the validity of subsequent proceedings. Appellant is quite right in pointing out that unilateral prior determination by a clerk that a commu-

3. "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by a written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classifica-

tion of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

4. Appellant testified that he did not become aware that a person of Jewish faith could qualify for conscientious objector status until after he had refused induction.

nication is not a written request for classification reopening could effectively deprive a board of its responsibility to use its judgment.[5] In this case, however, the letter was all too clear that no re-opening of classification was sought but that complete rejection of the system was the only course consistent with appellant's stated views. This was corroborated in the most convincing way by appellant's act of turning in his Registration Certificate and Notice of Classification.[6] To say that the clerk had a responsibility in this case to notify the board would in effect be to write a new regulation that all communications evidencing an intent not to comply with board orders and selective service regulations must speedily be brought to the board's attention. Such a detailed and arbitrary judicial mandate would, we think, be unwise. If the problem of non-communication by clerks to boards in proper cases is serious and wide-spread, it is the executive branch, perhaps prompted by Congressional concern, which should tailor the requirement to the need.[7]

■■■ This brings us to the post-reporting date request for a Conscientious Objector form. While courts have differed in their willingness to consider conscientious objector claims filed after an order to report but before refusal to report, see n. 7, there is virtual unanimity among the reported decisions in refusing to require boards to recognize post-induction date claims. Such is the clear, if not explicit, rationale of United States v. Stafford, 389 F.2d 215 (2d Cir. 1968); see also United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); Palmer v. United States, 401 F.2d 226 (9th Cir. 1968); Davis v. United States, 374 F.2d 1 (5th Cir. 1967); Keene v. United States, 266 F.2d 378, 384 (10th Cir. 1959).[8]

5.  For example, had the letter of October 20 simply contained information similar to that in the classification questionnaire in United States v. Sobczak, 264 F.Supp. 752 (N.D.Ga.1966) ["Have been raised in the faith of Jehovah's Witnesses but am not an active preacher."], the board might well have been obligated to furnish advice and a form 150.

6.  We note a singular myopia in that part of appellant's brief dealing with the possible interpretation of the letter of October 20. At no point in the argument are these contemporaneous acts referred to.

7.  This discussion assumes that if appellant had requested reopening of his classification on conscientious objection grounds after being ordered to report for induction but before refusing induction, the board would have been obligated to consider the request. While we recognize the considerable authority holding that an eleventh hour change in belief cannot be deemed "circumstances over which the registrant had no control," see, e. g., United States v. Helm, 386 F.2d 434 (4th Cir. 1967), cert. denied 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1968); United States v. Porter, 314 F.2d 833 (7th Cir. 1963); Boyd v. United States, 269 F.2d 607 (9th Cir. 1959), but see Dugdale v. United States, 389

F.2d 482 (9th Cir. 1968); Keene v. United States, 266 F.2d 378 (10th Cir. 1959), but see Martinez v. United States, 384 F.2d 50 (10th Cir. 1968), we are not willing to take such a position as a matter of law. While we concede that a registrant bears a heavy burden in proving the sincerity, the timing, and his lack of control over his belated change of belief, we envisage the possibility of his carrying this burden and are persuaded by the reasoning of the Second Circuit in United States v. Gearey, 368 F.2d 144 (1966) and United States v. Stafford, 389 F.2d 215 (1968). See also Note, "Pre-Induction Availability of the Right to Claim Conscientious Objector Exemption," 72 Yale L.J. 1459 (1963). This position has already been taken in this circuit in United States v. Blaisdell, Cr. No. 68–15 (D. Me. June 27, 1968).

8.  The rationale followed by two district courts, see United States v. Crawford, 119 F.Supp. 729 (N.D.Cal.1954) and United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955) that 32 C.F.R. § 1625.2 cannot be construed to deprive a registrant of consideration of a belated conscientious objector claim has been rejected by appellate courts which have considered the question. Boyd v. United States, supra 269 F.2d at 612; United States v. Kroll, 400 F.2d 923, 925 (3d Cir.

■ Appellant has cited one case, United States v. McNeal, Crim. No. 41993 (N.D.Cal. Sept. 10, 1968),[9] where the court held *inter alia* that a request for a form 150, made two days after the date set for induction, ought to have been considered by the board. This holding, however, would seem to have been implicitly overruled by the Ninth Circuit in Palmer v. United States, 401 F.2d 226 (9th Cir. Sept. 25, 1968) where the court held that a registrant had no right to have a post-induction date conscientious objector claim considered. Moreover, the only authority cited for the holding in *McNeal* was 32 C.F.R. § 1625.14.[10] This regulation speaks only in terms of the effect of a board's action in reopening a classification on non-compliance of its prior orders. It does not speak in terms of a registrant's right to seek a reopening of his classification. We read it as saying merely that if a board, either on its own motion or on a timely request, has decided to reopen a classification, the fact that a registrant has, pending decision, refused to comply with a prior order to report, the registrant shall not be reported to be a delinquent. See 32 C.F.R. § 1642.41.

This regulation gives a power to the board, not a post-induction date right to a registrant. So do we also read 32 C.F.R. § 1642.42 which empowers the board, after a delinquent has been reported as such to the United States Attorney for prosecution, to advise the United States Attorney of any action it has taken in the interim on the registrant's classification. Here, too, is a safety valve for the board, not a button which can be pushed at will by the registrant.[11]

Were the law to permit registrants to remain silent after being ordered to report for induction, to refuse induction (or to fail to appear for induction) and only subsequently by a first request for reopening of their status on grounds of conscientious objection to compel board consideration of the request, a premium would be placed on dilatory tactics, on a deliberate strategy of non-compliance, or on extreme diffidence and neglect— or a combination of all. Moreover, such an indulgence granted to the registrant who fails to report for and submit to induction would discriminate against the registrant who pursued his rights in a timely manner, was unsuccessful, but

1968) ; see also Davis v. United States, 374 F.2d 1, 4 n. 4 (5th Cir. 1967), and United States v. Beaver, 309 F.2d 273, 276 (4th Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

9. Appellant also cited one other unreported district court decision, United States v. Federspiel, No. 67–240 (N.D.Ohio, February 19, 1968). In that case the court held that the local board was required to give a registrant a hearing on the issue of reopening his classification, notwithstanding the fact that the first written communication of conscientious objection was executed after refusal of induction. The transcript of the court's oral opinion made no reference to cases and we do not find it persuasive.

10. "The reopening of the classification of a registrant by the local board shall cancel any Order To Report for Induction (SSS Form No. 252) or Order To Report for Civilian Work and Statement of Employer (SSS No. 153) which may have been issued to the registrant, except that

if the registrant has failed to comply with either of those orders, the reopening of his classification thereafter by the local board for the purpose of placing him in Class IV-C or Class V-A shall not cancel the order with which he failed to comply." 32 C.F.R. § 1625.14.

11. We subscribe to the view apparently taken by the Ninth Circuit in *Palmer*, supra 401 F.2d at 228 n. 1:
   "The board may (as 32 C.F.R. sec. 1625.14 seems to recognize) have *power* to reopen classification even after the registrant has refused to submit to induction and power thereby to cancel the induction order with which the registrant has refused to comply. This power is, if exercised, no more than a *sua sponte* response by the board to reexamination of its own proceedings. The registrant, however, has no right to a re-opening at this time. If the board chooses to stand on its record the registrant cannot assert prejudice resulting from that choice."

dutifully reported for and submitted to induction. Such a person could well reflect that the day of reckoning is better postponed by sleeping on one's rights.

█ What we have said disposes of appellant's claim that he was deprived of any right to have his local board consider the question of reopening his classification. He was, however, entitled to be issued a form 150. While this is irrelevant to his present objective to avoid either induction or punishment for refusal to report for induction, we see no limitation on a registrant's right to file such a form, Boyd v. United States, supra 269 at n. 6. Section 1621.-11 says merely that the board, on request, shall furnish such a form. Sections 1642.32 and 1642.33 grant to persons in custody all the rights and privileges of registrants—which would seem to us to include the right to file a form 150. Section 1643.3 contemplates a parole decision taking into account a claim of conscientious objector status. The form should be issued. This action, of course, conveys no further right to appeal to appellant. United States v. Gearey, supra. Nor does it have any impact on appellant's rights so far as this appeal is concerned.

█ Appellant's other challenges require less attention. He argues that the court erred in rejecting correspondence and conversations relating to the sincerity and time of maturation of his conscientious objection. We cannot reach this issue since we have held that no timely written request for reopening of classification was filed. Appellant's father submitted an affidavit of a talk with the foreman of the jury in which the latter said that he voted only under pressure. The pressure, however, was indigenous to the jury system. The fact that some jurors have weaker wills than others—or that one individual may bow to the pressure of eleven—cannot be a cause for reopening a case. The refusal of the court to ask jurors on the voir dire some questions addressed to their attitude toward the draft laws and conscientious objection was not objected

to. We can hardly invoke the plain error rule. We have considered other allegations of error but find that they do not merit discussion.

Affirmed.