UNITED STATES of America,
Plaintiff-Appellee,

v.

Stephen Haynes PERDUE, Defendant-Appellant.

No. 72-2341.

United States Court of Appeals,
Ninth Circuit.

Nov. 24, 1972.

Elizabeth E. Cobey (argued), John E. Thorne, of Thorne, Clopton, Herz & Stanek, Inc., San Jose, Cal., for defendant-appellant.

Chester Garfield Moore, III, Asst. U. S. Atty. (argued), Robert E. Carey, Jr., F. Steele Langford, Asst. U. S. Attys., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before CHOY and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Stephen Haynes Perdue appeals from his conviction in a nonjury trial of refusing to report for induction into the Armed Forces of the United States on March 24, 1970, in violation of 50 App. U.S.C. § 462(a).[1] He contends that: (1) his local draft board (Local Board No. 60, San Jose, California) failed to consider his conscientious objector claim or issue the Special Form for Conscientious Objector (SSS Form 150); (2) the board failed to forward his file to the appeal board after he had submitted a timely request for appeal; (3) the induction notice was invalid as being the result of a declaration of delinquency; and (4) the evidence was insufficient to sustain a judgment of conviction. The only evidence offered at the trial was a certified and exemplified copy of appellant's Selective Service file.

Perdue registered with his local board on January 20, 1964. In his initial Classification Questionnaire (Form SSS 100) he did not indicate any conscientious

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. Imposition of sentence was deferred and appellant placed on probation for four years on condition that he perform work of national importance for a period of 24 months.

objector claim.[2] He was classified II–S until the summer of 1966, when he was classified I–A, although he continued to attend college until the spring of 1967.

On August 31, 1967 the local board mailed Perdue a "Statement of Acceptability" (D.D. Form 62) reciting that he had been found "fully acceptable for induction into the armed forces." On the same date the board mailed a "Current Information Questionnaire," (SSS Form 127) which Perdue completed and signed on September 5, 1967. On September 23, 1967, after enrolling in college for the fall term, he mailed the board SSS Form 104 requesting a student deferment.

On October 25, 1967, before the board had ruled on the request for a student deferment, Perdue wrote a letter to the local board which forms the primary basis for his conscientious objector claim.[3] The letter reads:

"After studying, searching, and praying for the sake of peace, I have chosen the position of non-cooperation with the Selective Service System. Recognizing the full implication of the consequences of this position has been painful in light of the fact that I have taken this position out of a deep commitment to the Democratic and humane ideals for which America stands.

"I take this action in an attitude of truth as an affirmation of the brotherhood of all men and of service to my country, which means service to all men everywhere.

"Methods of compulsory conscription include pressure, impersonalization, discrimination, and violence, all of which continue to lead men, as they have in the past, to organized murder in the name of 'service to one's country.' As long as the youth of this country continue to be 'channelled' and compulsed by American militarism, America will continue to wage unjust wars. I seek to build a new community in America based upon the simple freedom of life. Thus the values which I hold, and indeed those which are in our Declaration of Independence and Constitution, are incompatible with those practiced by the war machine in this country. I can no longer live in complicity with the system upon which the very existence of the military depends.

"The reality of this demands a response with my total being. A person seeking to build a new way of life in America cannot submit with the context of his life to those forms of corruption which he is trying to eliminate.

"The present war in Vietnam is a manifestation of the sickness of our society at home. The war in Vietnam, I believe, is illegal and morally unjustifiable. My response to it comes from my allegiance to God, the highest authority in my life and thus as the dictate of my conscience. At Nuremberg we affirmed the principle that a man must follow the dictates of his conscience when, standing before God and fellow man, the demands of his state conflict with those of his conscience.

"I will not let the government use me in pursuing it's unjust and immoral actions.

"As an affirmation of a new way of life in which men are free to act upon belief and discover the liberation of

2. He did not sign "Series VIII—Conscientious Objector" to claim exemption as a conscientious objector and request the Special Form for Conscientious Objector (SSS 150). The claim for exemption reads:
 "By reason of religious training and belief I am conscientiously opposed to participation in war in any form . . . ."

3. Following an anti-draft demonstration on October 16, 1967 Perdue had delivered his original Registration Certificate to the office of the United States Attorney in San Francisco, but this fact was not known by his local board until March 6, 1968 when the card was returned to the board.

moral commitment . . . I prefer to resist.

"Yours in Peace and Freedom," [4]

The "Minutes of Actions by Local Board * * * " contain an entry on November 16, 1967, reading, "Reviewed & not Reopened", and an entry on November 20, 1967, "Form C–140 mailed." [5] There are no entries in the minutes between August 31, 1967, when DD Form 62 and SSS Form 127 were mailed, and the entry on November 16, 1967. It cannot accordingly be determined whether the October 25, 1967 letter was considered by the board since the only formal request for reopening and reclassification was the "Request for Undergraduate Student Deferment." This is immaterial unless the letter constituted a prima facie conscientious objector claim.

On November 24, 1967 an induction order was issued with a reporting date of December 7, 1967.[6] Perdue wrote the board on November 29, 1967: [7]

"I received your notification of induction. Thank you. In the interest of communication and the possibility of justice, I wish to remind you that you have in my file, a letter, which you acknowledged and considered, stating my position regarding these matters.

"Concisely and unequivocally stated again: firstly, I am bound by my conscience, and secondly, it is my patriotic duty, to this country in particular, under God, to resist and refuse compliance with the military system. I therefore inform you that I will not be present for induction on December 7, 1967."

On April 12, 1969 Perdue wrote the board:

" * * * While I do not recognize the legitimacy of a draft board, or Selective Service, in any society, I do recognize the need to communicate with people, however immorally conceived in such a body, who intend on considering certain actions with regards to my life or any other life. Therefore I think it necessary to let you know some of my present attitudes.

"Firstly, I consider all draft refusal cases, and in particular, mine, to have a relevance to all peoples of the world. That is to say, my induction refusal was a stand against the raping and pillaging of Vietnam by the U.S.A. and against U.S. Imperialism worldwide. Secondly, I do not intend to stand idly by and watch those who have joined me in RESISTING the draft, be unjustly sent to prison in the name of an idiotic Draft law, Draft board, or any of the inane patriotic rhetoric of nationalism and righteousness. I demand equal *unjust* treatment!

"Finally, since I last communicated with you (Dec. 1967) my stand has come to mean much more than a simple moral stand on my conscience, against the draft and Vietnam. It is my present feeling that for the future well being of all mankind, ecologically,

---

4. The letter was endorsed by three persons, one of whom was Perdue's father and pastor.

5. The clerk in fact (presumably through inadvertence, as the Government claims) mailed Form C–140 L notifying Perdue that reopening or reclassification of his case was not warranted because the board "did not specifically find that there had been a change in circumstances over which (he) had no control."

6. On August 14, 1969 Selective Service recognized that Perdue was not delinquent for failure to report on December 7, 1967 since he was pursuing a full time undergraduate course when this induction order was issued. His classification was reopened and the delinquency removed on September 18, 1969.

7. The parties rely upon this and three subsequent letters as a clarification of Perdue's belief and intent in writing the letter of October 25, 1967. Both parties quote excerpts from these letters. It is necessary to examine the letters in their entirety, to determine whether they support a conscientious objector claim.

politically, economically, socially, etc., America must radically change its posture and actions throughout the world.

"You and I must become Brothers together with all people. We must get together and plan a decent life with and for all people." (emphasis in original).

On October 6, 1969 Perdue wrote the board:

"I received today from your headquarters of death and oppression, the enclosed documents,[8] which I would burn a thousand times if it were not more effective politically to return them to you. I have no sense for their meaning.

"I have changed addresses, married, had several occupations, and forgotten about a SS number. On top of that, I refused induction willfully on Dec. 7, 1967, almost two months after having taken the position of total non-cooperation with the Draft, U.S. Imperialism, and the oppressive nature of present U.S. foreign and domestic policies, and furthermore I consciously counsel all young men to not submit to the Selective Service—*and* you know I do. You know my position with your existence. It is therefore, almost beyond belief and certainly my understanding why you would bother to send me any of the 'papers' you did, when my Brothers in Resistance are in jail for the same thing. I have said before that I *condemn* your playing games with my life—and I demand equal—illegal and immoral and unjust treatment under the present fascist laws.

" * * *

"Please do contact me—with something besides your mindless form letters.

"In fact, I beg you to reconsider your actions as individuals and as a branch of the U.S.A.'s global imperialism with its use of violence. I would ask you to resign your positions as the only consciencable (sic) action available to anyone who takes part in killing and other forms of destructive violence." (emphasis in original).

Finally, on December 2, 1969, in acknowledging receipt of another induction order,[9] Perdue wrote:

"Your communication I received with much surprise. I am keeping the actual induction notice for a souvenir. (I have another from Dec. 7, 1967 which I also have kept). My previous response has been well recorded with your organization; and since my response to my latest induction is going to be the same—except with more inner peace and strength on my part—I refer you to *all* my previous communications with your organization and the 'Justice Department.' That should be enough evidence for you to determine that you can not restrict my human rights with your 'Selective Service Official Notifications.'" (emphasis in original).

Appellant contends that the letter of October 25, 1967 "presents a prima facie case for conscientious objector status" and that the subsequent letters indicate more clearly Perdue's opposition to all war. The Government argues that the letters, taken together, simply "evidence a conscious choice of resistance to the draft." The district court was "unable to find in the registrant's letters to the

---

8. The "documents" consisted of a notice that Perdue's delinquency for failure to report for induction had been cleared, a notice of delinquency for failure to have a valid Registration Certificate in his possession, and a notice indicating a I-A classification and advice of right to personal appearance and appeal. Each was returned with "Resist the Draft" written over the face of the document. (Selective Service File (SSF) at 95–102)

9. Perdue was ordered to report on December 8, 1969. On February 5, 1970 his delinquency for failure to report was "removed" and Perdue so notified on February 6, 1970. He was mailed a third induction order on March 6, 1970 with a reporting date of March 24, 1970. His failure to report pursuant to this order is the offense for which he was indicted and convicted.

board expressing his dissatisfaction on political and moral grounds to the war and the Selective Service System anything that could be fairly construed as a prima facie conscientious objector claim." (Reporter's Transcript at 4).

 It is clear that Perdue did not at any time either execute or request Form 150; nor did he request reclassification as a conscientious objector or in express terms advise his local board that he claimed to be a conscientious objector. While Form 150 is not a precondition to consideration of a conscientious objector claim and under Local Board Memorandum No. 41[10] a local board must "consider for possible [conscientious objector] exemption all those who file some written statement claiming that status", this "does not change the general rule * * * that the burden is on the registrant to apprise the local board of *facts* which warrant a classification other than I–A." (emphasis in original) United States v. Enslow, 426 F.2d 544, 546 (9 Cir. 1970). Perdue had the burden of showing that he was entitled to classification as a conscientious objector.

United States v. Weaver, 423 F.2d 1126, 1127 (9 Cir. 1970); 32 C.F.R. § 1621.11.

"It is well established that when the local board is presented with nonfrivolous facts, which, if true, would constitute a prima facie claim for exemption or deferment, the board must reopen and reconsider the registrant's classification. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). *See also* 32 C.F.R. § 1625.2.[11] In order to qualify for conscientious objector status, the facts presented must clearly establish that the registrant has brought himself within the three basic tests recognized by the Supreme Court in recent decisions. First, he must show that he is conscientiously opposed to war in any form, not selectively to some wars.[12] * * * Second, he must show that his opposition is grounded upon religious training and belief, as construed by the Court in recent decisions.[13] * * * Third, and finally, he must show evidence of sincerity." [14] United States v. McKinley, 447 F.2d 962, 963 (9 Cir. 1971).

 It is clear that the phrase, "conscientiously opposed to participation in

10. Under the Local Board Memorandum No. 41 a registrant should be considered to have claimed conscientious objection to war if he signed Series VIII in Form 100, filed Form 150, "or if he has filed any other written statement claiming that he is a conscientious objector."

11. Further, under *Mulloy,* failure of the Board to reopen and reconsider the registrant's classification upon the presentation of a prima facie claim for an exemption or deferment, is an abuse of discretion by the Board, rendering the induction invalid and requiring reversal of the conviction, 398 U.S. at 418, 90 S.Ct. 1766.

 32 C.F.R. 1625.2 provides:

 "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action

is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

12. Citing Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

13. Citing United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

14. Citing Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

war in any form" means "that conscientious scruples relating to war and military service must amount to conscientious opposition to participating personally in any war and all war." Gillette v. United States, *supra*, 401 U.S. at 443, 91 S.Ct. at 832. Cognizant of the hard choice where principle of conscience and religious duty conflict with the secular state, Congress recognized a "claim of conscience running against war as such." *Id.* at 446, 91 S.Ct. at 834. It does not permit a registrant to choose between "just" and "unjust" wars. " * * * Congress intended to exempt persons who oppose participating in all war—'participation in war in any form' —and * * * persons who object solely to participation in a particular war are not within the purview of the exempting section, even though the latter objection may have such roots in a claimant's conscience and personality that it is 'religious' in character." *Id.* at 447, 91 S.Ct. at 835.

Counsel have not cited, nor have we found, any case precisely in point factually. A somewhat comparable situation was considered by the First Circuit in United States v. Stoppelman, 406 F. 2d 127 (1969), where the registrant turned in his Notice of Classification and Registration Certificate. At the same time he delivered a letter to the clerk of the board declaring that "my first allegiance is to my human citizenship," referring to the Vietnam war as "criminal" and to the Selective Service System as providing the "resources for this action and other suppressions of self-determination in the world," and stating that he would not cooperate with the Selective Service Board or accept any classification or deferment "which implies my consent to its right to function." *Id.* at 129. The letter was never brought to the attention of the local board. While the court felt that the clerk might well have done so, it con-

cluded that under the circumstances this was not required since the letter was "all too clear that no reopening of classification was sought but that complete rejection of the system was the only course consistent with appellant's stated views. This was corroborated in the most convincing way by appellant's act of turning in his Registration Certificate and Notice of Classification." [15] *Id.* at 131.

On the other hand, the following information in a letter to a local draft board was held to create a duty in the board to furnish the registrant with a Form 150:

"It is with deep sorrow that I must return my draft card to my local board in protest over the war in Vietnam. I hope that you understand that this act of civil disobedience is because of my moral convictions which say to me that man should not be forced to kill another human being." United States v. Moyer, 307 F.Supp. 613, 614 (S.D.N.Y.1969).

The court found that the letter was, "in effect, a request for a Form 150," and that the local board's failure to consider it as such, and failure to provide a Form 150, constituted a "blatant violation of the constitutional guarantee of procedural due process." *Id.* at 615.

■ Between October 25, 1967 and December 2, 1969 Perdue wrote five letters to his local draft board. In no one of them did he state in express terms that he claimed exemption as a conscientious objector or that he was "conscientiously opposed to war in any form." Nor did he at any time expressly request reclassification as a conscientious objector, although he had requested a student deferment in September, 1967.

■■ A registrant "has the burden of seeking reclassification." Palmer v. United States, 401 F.2d 226 (9 Cir. 1968). Ordinarily where the registrant

---

15. After Stoppelman was ordered to report, he requested a Conscientious Objector form. The court held that the board was not required to reopen classification at that time, citing, *inter alia*, Palmer v. United States, 401 F.2d 226 (9 Cir. 1968).

fails to state that he claims conscien- tious objector status or to ask for Form 150, there is no obligation on the part of the board to reopen or send the form,[16] although there may be a duty to reopen and send Form 150 when it is clear that the registrant has otherwise made a prima facie case.[17]

Perdue began his initial letter of October 25, 1967 with the statement that he had "chosen the position of non-cooperation with the Selective Service System." In this and subsequent letters he made it clear that he was "resisting the draft" and opposed the Vietnam war and other "unjust wars" waged by the United States. His letter of April 29, 1967, after stating that his "induction refusal was a stand against the raping and pillaging of Vietnam by the U.S.A. and against U.S. Imperialism world wide", demands "equal unjust treatment" with others who joined him in "resisting the draft" and who were "unjustly sent to prison in the name of an idiotic Draft law." In his letter of October 6, 1969 returning various notices from the draft board, he stated that he had "refused induction on December 7, 1967 almost two months after having taken the position of total non-cooperation with the draft, U.S. Imperialism, and the oppressive nature of present United States foreign and domestic policies "and that he 'consciously counsel(s)' all young men to not submit to the Selective Service." These letters clarify Perdue's purpose in writing the letter of October 25, 1967.

From a careful review of appellant's Selective Service file, and particularly all of the letters he wrote his draft board, we conclude that the district court was correct in holding that he failed to sustain his burden of establishing a prima facie conscientious objector claim.

■■ Appellant next argues that his letter of October 6, 1969 (quoted *supra*) constitutes an appeal under 32 C.F.R. 1626.11(a).[18] We recognize that "(r)egistrants are not to be treated as though they were engaged in formal litigation assisted by counsel," [19] and that a letter may be treated as an appeal where the "only possible message (a registrant) could have meant to convey was that he was dissatisfied with the board's order rejecting" his claim for reclassification and "that he wished to have it reviewed." [20] The letter of October 6, 1969 does not, however, manifest a desire to appeal the classification but rather conveys a "message" of resistance to the draft. As the district court found, "it manifests, as do all the defendant's communications with the board, a posture of complete non-cooperation." (Rep.Trans. at 5) Even under the most liberal reading, it may not be construed as an appeal.

Perdue contends that his induction order of March 24, 1970 was the result of a declaration of delinquency and so invalid. Appellant recognizes that the delinquency was removed prior to the induction notice, but argues that its presence prevented consideration of Perdue's deferment based on two claims pending before the board—his conscientious objector claim, already discussed, and a

16. United States v. Milliken, 416 F.2d 676, 678 (9 Cir. 1969).

17. See United States v. Fraser, 314 F. Supp. 1262 (D.Ariz.1970) and United States v. Moyer, *supra.*

18. 32 C.F.R. 1626.11(a)
"(a) Any person entitled to do so may appeal to the appeal board by filing with the local board a written notice of appeal. Such notice need not be in any particular form but must state the name of the registrant and the name

and identity of the person appealing so as to show the right of appeal. The language of any such notice shall be liberally construed in favor of the person filing the notice so as to permit the appeal."

19. Simmons v. United States, 348 U.S. 397, 404, n. 5, 75 S.Ct. 397, 99 L.Ed. 453 (1955).

20. United States v. Schmall, 452 F.2d 468, 470 (9 Cir. 1972).

medical claim concerning a "low back pain."

The only reference to "low back pain" is a physician's notation on a "Report of Medical History" dated August 9, 1967 reading "low back pain—mild." (SSF 44) The "Report of Medical Examination" of the same date found Perdue "acceptable". There is no reference to "low back pain" or any other medical claim in any of Perdue's communications with the board.

■ It is clear, as appellant argues, that a registrant entitled to exemption or deferment may not be deprived of them by being declared delinquent.[21] It is equally clear, however, that a person not entitled to an exemption or deferment is not "deprived" of them by a declaration of delinquency.[22] Perdue had presented no prima facie conscientious objector claim and no medical basis for deferment.'

Moreover, the board reviewed Perdue's file on September 18, 1969, removed the declaration of delinquency, retained him in I–A and declared a new delinquency. The second delinquency was removed on February 5, 1970. On March 6, 1970, after allowing Perdue's appeal time to run, the board ordered his induction.[23]

■ Finally, Perdue contends that there was insufficient evidence to prove that he did not report for induction on March 24, 1970, arguing that the entry on the minutes of the board, "Failed to Report for Induction" (SSF 10) is "unreliable and not sufficient evidence to support a conviction for failure to *report* for induction." (emphasis in original, Appellant's Br. at 27)

■ This contention is without merit. Perdue's Selective Service file was properly admitted. It contains an entry showing that the induction order (SSS Form 252) was mailed to Perdue and that he failed to report for induction. (SSF 10, 112) The order was sent to the address given by Perdue in his letter of October 6, 1969. He had received other communications at that address. There was a rebuttable presumption that he received the order.[24] There was no evidence that he had not received it.

■ Moreover, Perdue did not raise this issue at the trial and cannot properly raise it for the first time on appeal.[25]

Affirmed.

---

21. Oestereich v. Selective Service Board, 393 U.S. 233, 237, 89 S.Ct. 414, 21 L.Ed. 2d 402 (1968); Breen v. Selective Service Board, 396 U.S. 460, 466, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); *see also* Gutknecht v. United States, 396 U.S. 295, 307, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

22. 32 C.F.R. 1622.1 provides, in pertinent part:
 "(a) It is the local board's responsibility to decide, subject to appeal, the classification in which each registrant shall be placed. Each registrant will be considered as available for military service until his eligibility for deferment or exemption from military service is clearly established to the satisfaction of the local board."

23. While not argued and not otherwise confirmed, Perdue's Selective Service File at 10, admitted as evidence, contains this notation for March 6, 1970: "Random Sequence Number reached."

24. United States v. Bowen, 414 F.2d 1268, 1277 (3 Cir. 1969) and cases cited therein; United States v. Lee, 458 F.2d 32, 33 (9 Cir. 1972).

25. United States v. Kember, 437 F.2d 534, 537 (9 Cir. 1970); United States v. Currier, 453 F.2d 1242 (9 Cir. 1972).