**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Francis Arthur SANDOVAL, Defendant-Appellant.**

**No. 72-1395.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1972.

Decided March 20, 1973.

Don J. Svet, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., on the brief), for plaintiff-appellee.

Paul A. Phillips, Albuquerque, N. M., for defendant-appellant.

Before LEWIS, Chief Judge, Mc-WILLIAMS, Circuit Judge, and CHRISTENSEN, District Judge.

McWILLIAMS, Circuit Judge.

Sandoval was convicted by a jury of refusing to submit to induction into the Armed Forces in violation of the provisions of 50 U.S.C. Appendix § 462. Sandoval now appeals his conviction, contending that the trial court committed error in the conduct of his trial.

This is the second time this particular case has been before this court. *See* United States v. Sandoval, 449 F.2d 1338 (10th Cir. 1971), for a more detailed statement of background information. Brief reference at this point to our prior decision is necessary, however, if the present appeal is to be placed in focus.

At the heart of the controversy is the letter which Sandoval sent his local draft board on January 29, 1970.[1] In

---

I. "Jan. 29, 1970
Washington D. C.

"Dear Sirs:

"Enclosed find my 'draft card'—the latest one given me by your office. I feel very strongly that the moral commitments & beliefs I possess make it impossible for me to 'go along' or accept your legality.

"I return this card with a full knowledge of what the consequences of my act are or will be. I will not shirk those consequences by running away to Canada or trying to fail any pre-induction physicals.

"I feel that I must confront what I believe is the basic immorality of your system if I would be truthful with myself and those people I love.

"I am presently Regional Coordinator for the Western U. S. of Environmental Action here in Washington. We are organizing a national day of awareness about the problems we all face because of pollution, etc.

"My mailing address until April 22, 1970 is:

"Arturo Sandoval
Rm. 200
2000 P St., N. W.
Washington, D. C.
20036

"Sincerely yours,
/s/ Arturo Sandoval"

response to the indictment, Sandoval first filed a motion to dismiss on the ground that he had been denied procedural due process in that his claim of conscientious objection had been ignored by his local draft board. It was Sandoval's position that his letter of January 29 constituted a claim to be classified as a conscientious objector under the provisions of 50 U.S.C. Appendix § 456(j). In this connection, Sandoval argues that in response to his letter the draft board should have sent him a Form 150 or should have otherwise recognized his claim to objector status and that since his draft board did not in anywise answer his letter, he had been denied due process. The trial court granted the motion to dismiss and the Government appealed that ruling.

As indicated, on appeal, we reversed. United States v. Sandoval, *supra*. In reversing and remanding with direction that the indictment be reinstated, we held in so many words that the letter of January 29 "was not a statement of conscientious objection, it was instead an expression of opposition to the legality of the Selective Service System."

At trial of the matter after remand, the Government through the clerk of Local Board 34 introduced into evidence Sandoval's selective service file and then called as a witness Master Sergeant Rasmussen, who testified as to the failure of Sandoval to submit to induction at the induction station by taking the symbolic "step forward," even though warned that there was a penalty for failure to submit. In this latter connection, as was noted in our earlier opinion, Sandoval, in response to a question asked him at the induction station, answered as follows: "My personal and moral beliefs make it impossible for me to accept the legality of the S.S.S. and the U.S. Military."

The Selective Service file reflects, as indicated in our earlier opinion, that the only response of the local draft board to Sandoval's letter of January 29, 1970, was to once again reclassify him I–A on February 26, 1970, and to send Sandoval notice of such reclassification, which no-

tice Sandoval returned without comment to the board on March 5, 1970. There was no further communication between Sandoval and the draft board other than the board's order under date of June 29, 1970, that Sandoval report for induction on July 27, 1970. On the latter date, Sandoval reported, was found qualified for induction, but refused to be inducted.

In this court, Sandoval's various grounds of alleged error will be grouped as follows: (1) Error in excluding certain proffered evidence; (2) error in refusing to submit to the jury the question as to whether Sandoval had made out a claim of conscientious objection; and (3) error by the trial court in refusing to direct a verdict for Sandoval. We will consider each of these matters.

■ At trial, counsel sought to show what Sandoval "really meant" in his letter of January 29, 1970. This the trial judge refused to let him do, the judge being of the view that our earlier opinion had specifically held that the letter in question, as written, was not a claim for objector's status, but was an expression of outright opposition to the "legality" of the entire Selective Service System, and that by our opinion we had foreclosed such line of proposed inquiry. In so doing, the trial court properly construed and applied our prior decision. By that decision it became the law of the case that the letter of January 29 did not, as such, constitute a claim to be classified as a conscientious objector. Accordingly, the trial court did not err in refusing to let Sandoval go behind the letter in question by testifying as to what meaning he intended to convey in his January 29 letter. The letter speaks for itself.

■■ In like vein, upon trial, counsel tried to elicit from Sandoval his ethical and moral beliefs in an effort, presumably, to show that as of the time of trial, if not before, he was in fact entitled to a conscientious objector's status even though he had made no such claim to the draft board. Again, the trial court did not err in refusing to permit

such testimony to be brought before the jury. There having been no communication between Sandoval and the draft board subsequent to his letter of January 29, the only real issue is the effect of the January 29 letter, and by our prior opinion we have held that it was only a protest against the system. Under these circumstances, Sandoval's ethical and moral beliefs uncommunicated to his draft board are not material. Sandoval's failure, then, to exhaust his administrative remedies, i. e., make claim for a conscientious objector's classification and appeal any adverse ruling by the local board in connection therewith, bars any defense at trial that Sandoval was erroneously classified I–A. *See* McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

In this court Sandoval suggests that in composing his letter of January 29, he did not have the benefit of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), which was announced on June 15, 1970, and that, as we understand it, had he known of *Welsh* he would have couched the language in his letter differently. Or, alternatively, the draft board itself would have handled his letter differently had it the benefit of *Welsh*. This argument is not sound. We are only concerned with the language which was in fact used in the January 29 letter and whether such required the draft board to treat it as a claim for objector's status. This has been resolved by our prior opinion.

Further comment regarding *Welsh* is perhaps advisable in order to fully understand Sandoval's argument on this phase of the case. Sandoval at one time was deeply religious in the traditional sense and was an active member of an organized, recognized church. However, he then dropped out of the church. It was because of his disassociation from his church that Sandoval, according to his counsel, was disinclined to seek an objector's status since his opposition to war was, as he viewed it, not "prompted by orthodox or parochial religious beliefs."

In *Welsh*, the Supreme Court held that a registrant's conscientious objection to war is "religious" within the meaning of the statute if the opposition stems from registrant's moral, ethical or religious grounds about what is right or wrong and these beliefs are held with the strength of traditional religious convictions. We need not here get involved in any extended discussion as to whether *Welsh* represents "new law" on this particular matter. *See* United States v. Fargnoli, 458 F.2d 1237 (1st Cir. 1972). At least four members of the Supreme Court deemed *Welsh* to be controlled by the rule previously announced in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). And whether *Welsh* be regarded as an extension of *Seeger* or only a clarification thereof, the fact of the matter is that in *Seeger*, which was a case in which the three appellants did not belong to any orthodox religious sect, the Supreme Court held in 1965 that the test to be applied in determining whether a conscientious objection is religious oriented is whether the claimed belief occupies the same place in the life of the objector, even though not belonging to an orthodox religious sect, as an orthodox belief in God holds in the life of one clearly qualified for exemption.

Suffice it to say then, we do not regard *Welsh* as injecting any new element into the present case. When Sandoval sent his January 29 letter to his draft board, he did have the benefit of *Seeger*, which was in itself adequate to put him on notice that a claim of conscientious objection based on nonreligious grounds was not necessarily foreclosed by the then existing law. But he made no such claim; rather, he rejected the system and declared that he was ready to accept the consequences. *See* Gee v. United States, 452 F.2d 849 (5th Cir. 1971), cert. denied, 407 U.S. 909, 92 S. Ct. 2432, 32 L.Ed.2d 683 (1972).

 Counsel was also precluded from attempting to show that sometime after the date of Sandoval's induction proceeding the local draft board changed

its operating procedures. In this connection the clerk of the local draft board testified by way of an offer of proof that as of the date of the trial, i. e., February 9, 1972, though she would not automatically send a Form 150 in response to a letter of the tenor of Sandoval's letter of January 29, she would perhaps contact the registrant and "ask him what he meant." We do not see how this subsequent change in procedure, if such it be, inures to Sandoval's benefit.

In our earlier opinion in the instant case, we noted that Sandoval's letter of January 29 was quite similar in content to the letter under consideration in United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969). In the latter case it was suggested that some "thoughtful probing" of the registrant's views might have resolved the matter to the end that subsequent events, i. e., indictment and prosecution, could have been avoided. Notwithstanding this pointed suggestion as to better practice, the First Circuit in *Stoppelman* went on to hold that it was "all too clear" that the letter there in question was not a request for a reclassification but was a complete rejection of the system, and that neither the local board nor the clerk thereof was under any duty to make inquiry of the registrant as to any hidden meaning in his letter. Assuming that the local board in the instant case at a time subsequent to the events which form the basis for the present prosecution did determine as a matter of policy to make inquiry of a registrant who sends a letter of the tenor as that of Sandoval's letter of January 29, we do not see just how such would work to Sandoval's advantage. As in *Stoppelman,* Sandoval's letter was a complete rejection of the system and under such circumstances the local board was under no duty to make inquiry of Sandoval and the fact that the local board may have later changed its procedure in this regard is of no moment.

For the reasons above stated, we also held that the trial court did not err in refusing to submit to the jury the question as to whether Sandoval was entitled to conscientious objector's status. Under the circumstances, Sandoval was foreclosed from raising as a defense a claim of erroneous classification. McGee v. United States, *supra.* In this general connection we perceive no error in instructions given, or refused, by the trial court.

Finally, the evidence amply supports the verdict. The only real issue ever in this case was the effect of the January 29 letter. Having determined that it was not a request for conscientious objector's status, there remains little more that was in anywise in dispute. Sandoval admittedly received a notice to report for induction and, pursuant thereto, he did report but then refused to submit to induction. Such is in violation of 50 U.S.C. Appendix § 462.

Judgment affirmed.