**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Steven Scott FARMER, Defendant-Appellant.**

**No. 72–2149.**

United States Court of Appeals,
Ninth Circuit.

Argued Oct. 9, 1972.

Decided May 31, 1973.

Rehearing Denied July 9, 1973.

Hufstedler, Circuit Judge, filed dissenting opinion.

Jerry E. Berg (appeared), Palo Alto, Cal., for defendant-appellant.

James L. Browning, Jr., U. S. Atty., Joseph E. Reeves (appeared), San Francisco, Cal., for plaintiff-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and ANDERSON,* District Judge.

J. BLAINE ANDERSON, District Judge:

The appellant, Steven Scott Farmer, was convicted of failure to report for induction into the Armed Forces in violation of 50 U.S.C.A. § 462(a). Farmer first registered with his local draft board in September of 1969 and was classified 1–A on February 4, 1970. On January 8, 1971, he was ordered to report for a preinduction physical on January 21, 1971. On January 11, 1971, in response to the January 8th order, Farmer wrote the following letter to his local board:

"This letter is not an appeal or a request for special consideration. This letter is sent to you as a statement of my intentions. I will not present myself for your examination on January 21, 1971 or any other future date. Furthermore, if I am, pursuant to this letter, inducted into the armed forces I will also refuse that order. I will not go into the army. I will not serve the American Death Machine. I will not kill."

This letter was placed in the appellant's file by the clerk of the local board but was never communicated to the board. Furthermore, in line with the local board's policy at that time, Farmer was not sent a conscientious objector form, SSS Form 150, since he did not explicitly request one. It is now the policy of the appellant's local board to send a form when such a letter as Farmer's is received.

After his failure to report for the physical, Farmer was ordered to report for induction on May 19, 1971, but failed to report.

■■ Appellant presents this Court with two separate but similar claims of a denial of due process. The first issue is the duty of the local board to furnish a registrant Form 150, the standard form for a claim of conscientious objector.[1] Boswell v. United States, 390 F.2d 181 (9th Cir. 1968), overruled on different grounds, aptly states the board's duty, to wit: a board must grant the registrant *an opportunity to file a Form 150* and a refusal is a denial of due process. Boswell claimed he made *a request* for a Form 150 and that the clerk of the board refused to give it to him. There is no claim by Farmer in this case, nor any evidence tending to show that he made a request for a Form 150. Therefore, *Boswell, supra,* is little help in this matter since the real question we are dealing with is the duty of the board to furnish the registrant with a Form 150 when presented with a statement such as that made by Farmer. The board's change in "policy" is set forth above. Nevertheless, in deciding the matter before us, we are not necessarily confined by the policies of the board at any particular time, but rather, what the minimum standards are required by procedural due process. United States v. McKinley, 447 F.2d 962 (1971), sets forth the position in the Ninth Circuit vis-a-vis the board's duty to interpret registrant's statements and furnish or not furnish C-O forms accordingly. McKinley made the following statement on a questionnaire: "I am physically and mentally uncapable [*sic*] of killing another human being." The argument was then raised that the foregoing statement required the board to furnish the registrant with a Form 150. At pp. 963–964, the Court held:

"Moreover, given the substance of the communication and the context in which it arose, we further believe that it would be wholly unreasonable to construe appellant's statement as a request for a Form 150. To so hold would demand far too much of the local board in reviewing communication from registrants."

---

* Honorable J. Blaine Anderson, United States District Judge for the District of Idaho, sitting by designation.

1. § 1621.11, 32 C.F.R. provides that the local board must furnish SSS Form 150 upon request.

In the case at bar, it would place an even more unreasonable burden on the local board in reviewing communications from registrants if the board could not rely on a clear expression of total rejection of the system as stated by Farmer. Farmer's express and unequivocal language left no room for doubt—he did not want a Form 150, i. e., his letter was not "a request for special consideration." There was nothing for the clerk of the board to bring to its attention. Farmer's meaning and intent were direct and forceful. If he wanted no special consideration from the board, this Court should not hastily supply it. Surely some modicum of duty must be placed on the registrant. Registrants must be given some credit for intelligence. We should not assume that Farmer, with his vein of thinking and level of intelligence, was naive and ill-informed. He had six quarters of university study at the time of trial. (RT. p. 4) For appellant to say that he really wanted, but did not know how to ask for, a Form 150, and that his letter, when viewed in its entirety, constituted a request for a C–O form is strained semantic sophistry. Therefore, the appellant Farmer was not denied any procedural due process by the board's failure to provide him with Form 150.

█ The second claim raised by the appellant that the board breached its duty to "receive and consider" Farmer's letter causes somewhat more concern. Appellant's letter was placed in his file by the clerk of the board, but was never communicated to the board.[2] Several Ninth Circuit cases have dealt with this duty to "receive and consider". United States v. Miller, 455 F.2d 358 (9th Cir. 1972); United States v. Norman, 412 F.2d 629 (9th Cir. 1969); United States v. Harding, 461 F.2d 993 (9th Cir. 1972). However, none of these cases lends authority to the question at bar since each of those cases involved either a *request* for a particular classification or addi-

itional information in support of a *requested* classification which was not considered by the board. Farmer's letter, in his own language, was a positive "statement of my intentions", not a request for anything. Figuratively speaking, he burnt his draft card. Therefore, we must look to other case law to decide what the board's duty was with respect to appellant's letter. The case of United States v. Stoppelman, 406 F.2d 127 (1st Cir. 1969), cert. denied 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769, cited by the appellant, is nearly on all fours with the facts at bar. While it is true this Circuit is not bound by *Stoppelman,* it is nonetheless persuasive authority. Stoppelman delivered a letter to the clerk which stated the war in Vietnam was "criminal" and the Selective Service System was furnishing the "resources for this action and other suppressions of self-determination in the world" and turned in his draft card. This information was filed by the clerk but never communicated to the board itself. The registrant raised the same due process question that is being raised now. The court noted the serious consequences of a clerk not communicating such information to the board, but held at pp. 130–131:

> "Appellant is quite right in pointing out that unilateral prior determination by a clerk that a communication is not a written request for classification reopening could effectively deprive a board of its responsibility to use its judgment. In this case, however, *the letter was all too clear that no reopening of classification was sought but that complete rejection of the system was the only course consistent with appellant's stated views. . . .* To say that the clerk had a responsibility in this case to notify the board would in effect be to write a new regulation that all communications evidencing an intent not to comply with board orders and selective service regulations must speedily be brought to the board's at-

2. § 1622.1(c), 32 C.F.R., states: "The local board will receive and consider all information, pertinent to the classification of a registrant, presented to it."

tention. Such a detailed and arbitrary judicial mandate would, we think, be unwise." (emphasis supplied)

The distinction as noted by *Stoppelman* appears to be one of disregard for the system or rejection of procedures as opposed to letters in request of a classification or in support of a requested classification. It is only in the latter circumstances that the board is put under a duty to "receive and consider". Taking the substance and context of Farmer's communication, there could not arise any duty of the board to "receive and consider" it nor treat it as a request for a Form 150; and hence, no denial of procedural due process. While it is true the Court in *Stoppelman* stated the registrant was entitled to a Form 150, that was in response to a specific request by his counsel and not as a result of the letter.

■ On the same basis, any claim by the appellant of the board's failure to reopen his classification must be rejected. Here again, a board's decision must be based on a following of the procedures, i. e., a request for a classification or an intent pointing to a classification. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362. At 416, 90 S.Ct. at 1771 the Court noted:

"Where a registrant makes nonfrivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the *requested* reclassification, the board must reopen the registrant's classification. . . . ." (emphasis supplied)

As noted previously, Farmer made no request or attempt to request and, therefore, no decision with respect to reopening was forthcoming by the board.

The conviction is affirmed.[3]

HUFSTEDLER, Circuit Judge (dissenting):

The majority opinion, in my view, cannot be reconciled with 32 C.F.R. § 1622.1 (c) or with our cases construing and applying it. The regulation states: "The local board will receive and consider all information, pertinent to the classification of a registrant, presented to it." Farmer's letter to his board contained new information indicating his opposition to killing; the information was pertinent to his classification, because it related to a potential conscientious objector claim. The board's duty to receive and to consider new information that may affect the registrant's status does not depend upon the language or the form that the registrant uses to bring the information to the board's attention. A registrant is not expected to know the legal effect of the information he presents to his board. Communications between a registrant and his board are to be construed generously in the registrant's favor; they are not to be scrutinized as if they were exchanges of pleadings between adversaries.[1] After Farmer was notified of his induction, his board routinely sent conscientious objector forms to registrants who expressed

3. On facts seemingly more favorable to appellant there, a unanimous panel of this Court recently reached the same conclusion in affirming a conviction. United States v. Perdue, 9 Cir. 1972, 469 F.2d 1195.

   The majority is not unmindful of, and has considered, the per curiam opinion in United States v. Kelly, 9 Cir., 1973, 473 F.2d 1225 and relied upon, in part, by Judge Hufstedler. We are of the opinion the case is distinguishable. Farmer furnished no new facts, no written request nor any relevant information. He emphatically forswore the system and wanted no part of it. Kelly did furnish "new facts", i. e., he intended to complete his high school education, and did not renounce further responsibility to the system.

1. Applying this standard, I cannot equate Farmer's letter with burning a draft card.

opposition to killing regardless of any specific request therefor. United States v. Kelly (9th Cir. 1973) 473 F.2d 1225; United States v. Miller (9th Cir. 1972) 455 F.2d 358; United States v. Harding (9th Cir. 1972) 461 F.2d 993; and United States v. Norman (9th Cir. 1969) 412 F.2d 629, each held that a failure of clerical personnel to bring new information to the board's attention was a denial of due process. Farmer's letter did not expressly request reopening or reclassification, and the facts stated did not make out a prima facie claim for such relief. None of the cited cases require those showings before Section 1622.1(c) comes into play. (*See also* Eagles v. Samuels (1946) 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308; Mulloy v. United States (1970) 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362; Mizrahi v. United States (9th Cir. 1969) 409 F.2d 1219.) Initial consideration of the new information was not committed to the board's clerical personnel, or, indeed, to this court; it was committed to the board, and the board never saw it.

If Farmer had expressly requested a Form 150, the majority acknowledges that the board's failure to comply would deny him due process. It concludes that no due process violation is involved because Farmer's letter cannot be construed as a request. I disagree. His board's later policy is an administrative recognition that construction of such letters as requests for Form 150 is not only possible, it has become routine The burden of sending a form is very slight, and the consequences to the registrant who has a strong conscience and a poor pen are grave. We should not draw the due process line against those whose words are ill-chosen or even reckless if the language conveys the substance of a potential conscientious objector claim.

If serious problems of construction are involved in the interpretation of information submitted to the board, the interpretation is not a ministerial act. It is a discretionary act committed to the board.